JAIRUS E. CLARK *vs.* E. THOMAS SAWYER.

Hampshire.    September 17, 1889. — February 26, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Insolvent Debtor — Assignment for Benefit of Creditors — Advances —*
*Legal Services.*

An insolvent debtor before he was put into insolvency stopped his business and made a voluntary assignment for the benefit of creditors. The assignee before acceptance took certain property of the insolvent as security for advances made by him in good faith for the payment of wages then due the insolvent's workmen, for which they were threatening to sue him. Subsequently, the assignee accepted the assignment and collected a sum of money due the insolvent, out of which he in good faith paid for legal services rendered in protecting the rights of all parties. *Held*, that the assignee was entitled to his advances, and to the expenses incurred by him for such legal services.

HOLMES, J.    This is an action brought by the assignee in insolvency of Webster and King, silk manufacturers, to recover the value of property transferred by them to the defendant shortly before they were put into insolvency in February, 1888. The main controversy concerned two bales of silk delivered to the

defendant on January 14, 1888. Before that time Webster and King had asked the defendant to accept a voluntary assignment for the benefit of creditors, and on December 24, 1887, they had made an assignment to him, and had put it on record. According to the defendant's testimony, however, he had not accepted it on January 14; and on that day Webster and King borrowed of him $1158.18 to pay their workmen for work done in November and December, 1887, giving the silk as security. The business of their factory stopped on December 24, 1887, and was not resumed, except for five days, beginning January 2, 1888. The court allowed the jury to find for the defendant, if he advanced the money and received the silk under a special assignment, before he had consented to the above mentioned general assignment, as one transaction, in good faith, without intent to defraud or to aid in any fraud. The plaintiff asked for a ruling, that, if Webster and King were insolvent, and the defendant had reasonable cause to believe them so, he could have no lien as against the plaintiff. This was refused.

We see no error in the instruction or the refusal. The argument for the plaintiff assumes that the defendant not only had reasonable cause to believe that Webster and King were insolvent, but knew that they had given up the hope of going on with their business. There was no such qualification in the instruction asked, and we cannot say, as matter of law, that the defendant must be taken to have known that fact, if it was a fact. There is no doubt that the defendant had a right to make an advance *bona fide* for the purpose of helping the insolvents to get upon their legs and go on; and even if this was not expected, but it was intended to save costs and expense by preventing suits, which were threatened in this case, and the payments contemplated were not unlawful preferences, but lawful payments, as here, we see no reason why the advances should not stand as well as one made for the purpose of completing a contract. The fact that one workman gained an advantage of a few dollars does not change the case, because it does not appear that the defendant knew that any workman had a claim for more than two hundred dollars. See *Carnes* v. *White*, 15 Gray, 378; *James* v. *Newton*, 142 Mass. 366, 379; *Tiffany* v. *Boatman's Institution*, 18 Wall. 375.

One other question is raised by the bill of exceptions. Sooner or later the defendant did accept the general assignment to him, and collected some money due Webster and King. He claimed the right to deduct from what he received a sum paid by him for legal services while acting under the assignment. The jury were instructed that the assignment was void as against the plaintiff, and that any legal services rendered to carry out or maintain it could not be paid for out of the estate; but that the defendant had a right to pay a reasonable sum for services, in good faith, to aid him in protecting the rights of all parties, and to enable him so to conduct the business intrusted to him that the interests of all parties affected by it should be guarded, and that everything should be administered according to law.

We have no doubt that the instruction was right in what it disallowed. *Hastings* v. *Spenser*, 1 Curtis, 504. With more hesitation, we are of opinion that it does not appear to have been wrong in what it authorized the jury to allow the defendant. We do not consider whether the case is affected in any way by the St. of 1887, c. 340, as that statute does not seem to have been adverted to, and the bill of exceptions is not drawn with reference to it. The instructions to the jury, as we understand them, allowed the defendant only expenses incurred in the preservation of the property. What the legal services were we do not know, but we cannot say that such services might not be necessary to protect the rights of all parties interested in the estate. *Hunker* v. *Bing*, 9 Fed. Rep. 277, 283. *Platt* v. *Archer*, 13 Blatchf. 351. *Bartlett* v. *Bramhall*, 3 Gray, 257. *Wakeman* v. *Grover*, 4 Paige, 23, 43, and 11 Wend. 187, 226. See *Collumb* v. *Read*, 24 N. Y. 505, 515; *Hunt* v. *Weiner*, 39 Ark. 70.

*Exceptions overruled.*

*J. C. Hammond*, for the plaintiff.
*D. W. Bond*, for the defendant.