### In re CURTIS et al.

#### (Circuit Court of Appeals, Seventh Circuit.   March 22, 1900.)

#### No. 654.

**1. BANKRUPTCY—APPEALS—APPEALABLE ORDERS.**

Under Bankr. Act 1898, § 25a, subd. 3, authorizing an appeal, from the district court sitting in bankruptcy to the circuit court of appeals, "from a judgment allowing or rejecting a debt or claim of $500 or over," an appeal may be taken by a trustee in bankruptcy from an order of the district court allowing a fee to counsel for the petitioning creditors in a case of involuntary bankruptcy, when the sum so allowed reaches the jurisdictional limit.

**2. SAME—FEES AND COSTS—COUNSEL FEES.**

Under Bankr. Act 1898, § 64b, subd. 3, providing for the payment out of bankrupts' estates of "one reasonable attorney's fee to the petitioning creditors in involuntary cases," counsel for such creditors are entitled to such reasonable fee as of right, and its allowance or disallowance is not a matter of discretion with the court of bankruptcy.

**3. SAME—AMOUNT OF FEE.**

The amount to be allowed as counsel fees to the petitioning creditors does not rest in the arbitrary determination of the district court, but in legal judgment and judicial discretion, and the exercise of such discretion is subject to review by the appellate court.   The amount must in all cases be reasonable, and depends upon the services rendered and their value, such value to be determined upon evidence, or, in the absence of evidence, upon the court's knowledge of their worth.

**4. SAME.**

In a case of involuntary bankruptcy, the district court allowed the sum of $12,500 to counsel for the petitioning creditors for professional services in securing the adjudication.   It appeared that the only contest on the petition for adjudication was as to an alleged estoppel against the petitioning creditors to maintain the petition, growing out of their participation in proceedings in a state court on a general assignment previously made by the bankrupts, which was the act of bankruptcy alleged.   The time necessarily consumed by counsel in preparing and conducting the case before the district court, and on appeal from the adjudication, did not exceed one month.   The assets of the bankrupt partnership available for its general creditors probably amounted to about $100,000.   If there had been no adjudication of bankruptcy, the estate would have been administered and distributed under the direction of a state court, in pursuance of the assignment for creditors.   *Held*, that the sum allowed to counsel was excessive, and should be reduced to $2,000.

Appeal from the District Court of the United States for the Southern District of Illinois.

This is an appeal by the trustees in bankruptcy from an order of the district court sitting in bankruptcy, made October 17, 1899, allowing the sum of $12,-500 to counsel for the petitioning creditors for professional services.   On August 11, 1898, the bankrupts, co-partners transacting a banking business under the name of the "Bank of Waverly," made a voluntary assignment of their property for the benefit of their creditors, pursuant to the statutes of the state of Illinois.   On the 1st day of November, 1898, three creditors, having claims to the requisite amount, filed in the district court their petition, seeking an adjudication in bankruptcy against the bankrupts, alleging for act of bankruptcy committed the making of the voluntary assignment.   On the 4th day of November, 1898, the debtors answered the petition, admitting the facts alleged, but setting up facts by way of estoppel upon the petitioners to prosecute their petition.   On the 25th day of November, 1898, the petitioning creditors filed an amended petition in explanation of the facts asserted against them by

way of estoppel, and also asserting additional acts of bankruptcy by alleged fraudulent transfer of property by the bankrupts within the period prescribed by the act. On the 2d day of December, 1898, four other creditors of the bankrupts filed their petition asking leave to join and become parties to the petition seeking an adjudication in bankruptcy, and leave so to do was granted by the court. On the 12th day of December, 1898, the bankrupts filed an answer to the amended petition, reasserting the estoppel charged, taking issue upon the additional acts of bankruptcy alleged, and, as to the intervening petition of the four creditors joining with the creditors in the original petition, denying indebtedness to two of them, admitting an indebtedness of over $900 to the other two, but asserting the like estoppel as to all four of them. There being the requisite number of creditors and the requisite amount of debts, without counting the two creditors whose debts were denied, and not including Caruthers, one of the petitioning creditors, the matter was submitted to the district court sitting in bankruptcy upon the question whether the creditors seeking adjudication were estopped by the filing of their claims under the voluntary assignment. The district court in Re Curtis, 91 Fed. 737, held that the petitioning creditors were not estopped, and entered a decree adjudicating bankruptcy; from which decree the bankrupts appealed to this court, where the decree was affirmed (In re Curtis, 36 C. C. A. 430, 94 Fed. 630). Thereafter, on the 6th day of October, 1899, counsel for the petitioning creditors presented a petition to the district court praying for the allowance of "one reasonable attorney's fee" for services to the petitioning creditors in procuring the adjudication in bankruptcy, to be charged against and paid out of the estate pursuant to the bankrupt act, and asserting that the trustees had in possession over $30,000 in money. The trustees appeared to this application, and the matter was submitted to the court for determination upon the record of the proceedings, and without the evidence of any professional gentlemen touching the value of the services rendered. The court below, on the 17th day of October, 1899, entered an order awarding the allowance mentioned. This order is brought here for review on appeal by the trustees.

Burke Vancil, for appellants.
Bluford Wilson, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

In the administration of an estate in bankruptcy the law permits the allowance of "one reasonable attorney's fee for the professional service actually rendered * * * to the petitioning creditors in involuntary cases." 30 Stat. c. 541, § 64b, subd. 3. The act grants an appeal to this court from an order of the district court sitting in bankruptcy allowing or rejecting any claim exceeding $500 against the bankrupt estate. 30 Stat. c. 541, § 25a, subd. 3. This clearly lodges in the appellate court the right to review the allowance of any such claim. The attorney for the petitioning creditors is entitled to this reasonable fee as of right. Its allowance or disallowance is not matter of discretion. So, also, the amount to be allowed does not rest in mere discretion. The amount must in all cases be reasonable, to be determined upon evidence of the service performed and of its value, and, in the absence of evidence of its value, by the court from knowledge of its worth. The amount to be allowed rests in legal judgment and judicial discretion, but not in unrestrained discretion, and that judgment and judicial discretion are subject to review. We are loath to disturb a finding upon a question of this

100 F.—50

character, unless fully persuaded that the judgment of the court was founded in misconception of the ground upon which the allowance should be based, or, if proceeding upon correct grounds, that the amount allowed was largely excessive or greatly inadequate. The question is one of delicacy, but the duty of review may not be put aside. It becomes us, therefore, to inquire with respect to the matter in hand concerning the character and value of the service rendered, and of the grounds upon which the allowance was predicated. The elements which enter into and should control judgment upon the value of professional services we think to be these: The nature of the service, the time necessarily employed therein, the amount involved, the responsibility assumed, and the result obtained.

The service was rendered in the procuring of an adjudication of bankruptcy. The petition was presented by three creditors, and alleged for act of bankruptcy the making of a voluntary assignment after the bankrupt law went into operation. The answer admitted the facts alleged, but asserted that Caruthers, one of the petitioning creditors, had actively participated in the proceedings in the state court under the voluntary assignment, that the other two had filed their claims with the assignee, and charged that the petitioners were thereby estopped to prosecute their petition. The amended petition sought to excuse the acts claimed to work an estoppel, and asserted a fraudulent conveyance of real estate by the debtors. The answer thereto took issue upon the alleged fraudulent conveyance, reasserted the estoppel against the original petitioners, charged that the four creditors who were allowed to join as petitioners were likewise estopped because they had filed their claims with the assignee, and denied indebtedness to two of them. It will thus be seen that upon the merits of the original petition the case was simple. Creditors to the requisite number and amount were united in the petition. Their claims were not disputed, and the act of bankruptcy charged was admitted. The difficulty encountered arose wholly from the embarrassing position in which these creditors had placed themselves by their voluntary acts in filing their claims with the assignee under the proceedings in the state court. The court below held against the estoppel upon the ground that after the passage of the bankrupt law a voluntary assignment was absolutely void, that the proceedings under the law of the state to carry the assignment into effect were coram non judice, and that any act of creditors under such void proceedings could not work an estoppel. This court, however, placed its decision upon the ground that there was no estoppel because no action had been taken upon the claims filed, with the exception of Caruthers, and that no detriment, in a legal sense, had resulted from the filing of the claims; that, omitting the claim of Caruthers, who had actively participated in the proceedings, creditors to the requisite number and amount were united in the petition; that the question was whether by electing one remedy the creditors were precluded from asserting another and supposed better remedy. We held upon the facts of the case, and following our ruling in Oil Co. v. Hawkins, 46 U. S. App. 115, 20 C. C. A. 468, 74 Fed. 395, 33 L. R. A. 739, that they were not precluded. This was the nature of the service that was

rendered, and involved the investigation and discussion of the questions whether a voluntary assignment after the passage of the bankrupt law was void, or voidable merely, of the doctrine of estoppel in pais, and of the election of remedies. These questions were important, requiring careful study and legal ability for their proper presentation to the court. It may be doubted, however, whether the estate should be charged in entirety for the service thus rendered. The clear meaning of the bankrupt act (section 64b, subd. 3), is that the service to petitioning creditors chargeable upon the estate is limited to the service rendered in procuring the adjudication. We take it that such service is charged upon the estate because of the supposed general benefit thereby accruing to the body of creditors, and upon the principle that he who shares the fruit should share the cost of gathering it. The main subject of the litigation went to the right of the petitioning creditors to invoke the law, not whether the debtors had committed an act of bankruptcy. But for the plight in which the petitioning creditors were involved, the necessary service would have been slight. It is questionable whether, under such circumstances, the increased cost of litigation should be charged upon the estate, unless all other creditors, or most of them, stood in the same plight. The record here does not fully disclose the fact, but we think the fair inference from all that appears is that all, or nearly all, of the other creditors had filed their claims with the assignee. We therefore assume for the purposes of this discussion that all stood in the like plight with the petitioning creditors, and that the estate should be charged with the reasonable cost of the litigation. This we hold in obedience to the statute, although it would seem that the proceedings in bankruptcy were counter to the wishes of a large body of the creditors. Prior to the adjudication, creditors representing claims to the amount of $124,568.89, out of a total secured and unsecured partnership indebtedness of $158,794.44, protested to the district court against the granting of the petition in bankruptcy, for the reason, as stated, that the estate was being properly administered in the state court, that considerable progress had been made in the administration of the estate under the assignment, and that proceedings in bankruptcy would impose additional costs upon the estate without corresponding benefit. While this protest was properly disregarded as affecting the rights of the petitioning creditors to invoke federal jurisdiction, the fact lends countenance to the suggestion that the petition was in fact instituted and prosecuted by Caruthers, not in the interest of the general creditors, but in his own interest, and because of his failure to obtain the desired payment of his debt in preference to, or in advance of, other creditors, through the proceedings instituted by him in the state court. He was manifestly the moving spirit in the proceedings in bankruptcy. His claim amounted to $16,913.02, out of a total indebtedness represented by the three petitioning creditors of $18,113.38. Under our ruling, if the assignment was voidable merely, and not void, Caruthers was clearly estopped to invoke the law. Omitting his claim and the disputed claims of two of the four additional creditors who were allowed to join, the petition

was represented by creditors whose total claims amounted to $2,318.

The time employed in this service cannot be accurately determined from the record or from the statements of counsel at the bar. The trial below, it is said, occupied three days; the argument in this court, one day. It was also stated that two weeks' time was taken up by one of the counsel in the investigation of the questions involved. We think it would be a liberal estimate to say that one month's time was occupied in the performance of the service for which compensation is sought.

The amount of this estate is to be ascertained from the schedules filed by the debtors of their partnership and individual property and liabilities, and from the appraisement of the estate made under the direction of the district court. There is somewhat of confusion between the schedules and the appraisement, but for all practical purposes that may be overlooked. These statements have been submitted to careful scrutiny, and a result obtained which we believe to be substantially accurate. By the analysis of the individual estate we seek to ascertain the amount applicable to the payment of partnership indebtedness, because individual indebtedness must first be paid in full out of the individual estate, and the residuum only is applicable to the payment of partnership liabilities. In the case of Hutchinson, who has an estate of but $294.33, and that exempt by law, his individual liabilities are scheduled at $18,204. There is therefore nothing here for partnership creditors, and we omit his name from the table. We also omit debts reported bad. Any probable collection from them will naturally be offset by any possible small amount which may fail to be collected of debts reported good.

T. E. Curtis' estate is as follows:

| | | |
|---|---:|---:|
| Value of real estate | $24,900 00 | |
| Less mortgages thereon | 7,500 00 | |
| | | $ 17,400 00 |
| Personal estate: | | |
| Assets, good | $ 1,132 70 | |
| Assets, doubtful | 2,354 42 | |
| | | 3,487 12 |
| | | $ 20,887 12 |
| Less individual debts scheduled | | 12,900 00 |
| Net apparent estate subject to partnership debts | | $ 7,987 12 |

Augustine A. Curtis' estate:

| | | |
|---|---:|---:|
| Real property | $24,605 00 | |
| Less mortgages | 11,250 00 | |
| | | $ 13,355 00 |
| Personal estate: | | |
| Assets, good | $ 1,180 29 | |
| Assets, doubtful | 12,000 91 | |
| | | 13,181 20 |
| | | $ 26,536 20 |
| Less individual debts scheduled | | 20,400 00 |
| Net apparent estate subject to partnership debts | | $ 6,136 20 |

Frederick H. Curtis' estate:
Real property............................................... $39,325 00
Less mortgages.............................................. 13,300 00
                                                     $ 26,025 00

Personal estate:
Assets, good................................................ $ 4,308 42
Assets, doubtful............................................ 6,572 38
                                                     10,880 80

                                                     $ 36,905 80
Less individual liabilities scheduled.................. 24,620 00

Net apparent estate subject to partnership debts..... $ 12,285 80

Albert Rohrer's estate:
Real property............................................... $65,760 00
Less mortgages.............................................. 28,500 00
                                                     $ 37,260 00

Personal property:
Assets, good................................................ $ 4,343 99
Assets, doubtful............................................ 14,102 32
                                                     18,446 31

                                                     $ 55,706 31
Less individual debts scheduled...................... 25,347 50

Net apparent estate subject to partnership debts..... $ 30,358 81

John D. Batty's estate:
Real property............................................... $34,245 00
Less mortgages.............................................. 5,000 00
                                                     $ 29,245 00

Personal property:
Assets, good................................................ $ 1,046 25
Assets, doubtful............................................ 217 18
                                                     1,263 43

                                                     $ 30,508 43
Less individual debts.............................. 13,900 00

Net apparent estate subject to partnership debts...... $ 16,608 43

The apparent aggregate amount of individual estate
  subject to partnership debts is thus................ $ 73,376 36

The partnership estate is as follows:
Real property............................................... $20,865 00
Less mortgages.............................................. 11,700 00
                                                    $ 9,165 00
Personal estate:
Cash ....................................................... $27,780 78
Debts, good................................................ 15,748 74
Debts, doubtful............................................ 88,804 42
                                                     132,333 94

Total apparent partnership property.................. $141,498 94
Total apparent individual property to pay partnership
  debts ................................................. 73,376 36

                                                     $214,875 30
Deduct exemption allowed by law..................... 7,000 00

Apparent estate to pay partnership debts............. $207,875 30

This amount is apparent, but not real, and from the labyrinth of figures presented we must ascertain, as best we may, the approximately real value of the property. In this real estate the wives of the bankrupts have dower. The value of that dower should be deducted, but the record gives no data from which computation can be made. It is also to be observed that the values stated are only estimates, resting in mere opinion. It is common experience that the estimates of the value of real estate are seldom realized, even upon a sale between an owner willing to sell and a purchaser desiring to buy. Most of the real estate here is incumbered by mortgages, in many cases for over half its estimated value. Upon some, if not all, of this mortgage debt, amounting to $77,250, there is arrearage of interest for two years. Whether there is like arrearage of taxes we are not informed by the record. The circumstances render the inference not improbable. If these mortgages should be foreclosed, and the property sold thereunder at forced sale for the principal, accumulated interest, taxes, and costs, can it reasonably be supposed that the equity of redemption will prove of substantial value? Is it not more likely that the entire real estate will fall to the mortgagees? The partnership real property well illustrates what may reasonably be anticipated. The mortgage is $11,700; the equity is estimated at $9,165. There is upon this mortgage two years' accumulation of interest. By the time a sale can be had the amount due for principal, interest, taxes, and costs will amount fully to $14,000, leaving an apparent equity of $6,865 in a property situated in a town in the southern part of the state of Illinois with a population not exceeding 1,500. Can it reasonably be hoped that any speculator will purchase this property, paying the heavy incumbrance thereon, in expectation that he will realize profit therefrom, and pay any substantial sum for the equity? Is it probable that any one creditor, seeking to recover what he can from the wreck of this business, would pay any substantial sum for this equity, and assume the incumbrance upon it? The estate is put into bankruptcy that there may be forced sale and money realized for the creditors. It is common experience with respect to mortgaged real estate and the real estate of insolvents that the full value of it cannot be realized, and that it is convertible into money only at great sacrifice. It is, of course, impossible to accurately estimate the extent of that sacrifice, but dealing with the situation most liberally, as we think, if two-thirds of the estimated value of all this equity of redemption should be obtained the creditors will be more than fortunate. That percentage is surely a conservative estimate. So, also, with respect to the doubtful debts. All experience in insolvent or bankrupt estates shows the recovery of but a small percentage of such debts, and the case of this wrecked and broken bank is not likely to furnish an exception, especially so when the fact is considered that, of the $88,804.42 of doubtful debts of the partnership, $79,442.55 in amount represents debts owing to the bank by the bankrupt debtors themselves. It is seldom, we think, that in case of insolvency or bankruptcy 40 per cent. of doubtful debts is realized. In the light of the fact just stated, we do not think it probable that 10 per cent. will be realized, but upon the most liberal

estimate 50 per cent. would be all and more than may be hoped for. The total estimated value of the equity of redemption in the land, individual and partnership, is $132,450. 33⅓ per cent. of this amount is $44,150. The total doubtful claims, individual and partnership, are $124,051.63, of which 50 per cent. is $62,025.82. Deducting, then, from the total apparent estate mentioned above of $207,875.30, this 33⅓ per cent. of the equity and 50 per cent. of the doubtful claims, there remains $101,699.48 as the most which reasonably can be relied upon for the payment of unsecured partnership indebtedness, which amounts to $138,800.24.

The practical result obtained through this service was that the estate, individual and partnership, was impounded in the federal court for collection, administration, and division among creditors according to their respective rights. A like result should not have failed if the voluntary assignment had not been attacked, and the proceeding in the state court had continued to a conclusion; for it is the object sought to be reached, as well by the state as by the national law, to marshal the assets, and to distribute the estate equitably among the creditors. It is said, however, that in the one case the assignee is appointed by the debtors, while in the other the trustee is selected by the creditors, and this is true; but in either case the estate is administered under the direction and control of the court. It is also said that here the assignee was not only the creature of the debtors, but was improperly administering the estate in their interest, leaving a considerable portion of the estate in their hands. If this were so, a proper application to the court administering the estate should have corrected the evil complained of by removal of the assignee nominated by the debtors, and the appointment of a fit person selected by the court. It is not permitted us to indulge the suggestion that the state court would not have performed its full duty in the premises, and render complete relief to creditors, from any supposed dereliction on the part of the assignee. This consideration, however, does not affect the right of creditors to invoke the jurisdiction of the federal court. That right was absolute. We only observe upon the condition of affairs existing before adjudication of bankruptcy as bearing upon the practical result obtained by the adjudication in the federal court. It is not fair to say that by the adjudication the creditors obtained that which they otherwise would have lost. It may be that under the control of the federal court a more thorough collection of the assets may come about, increasing the dividend to creditors. That, however, remains to be accomplished. The practical result of the litigation was to impound this estate for administration in the federal court instead of the state court, and the practical benefit, if any, to the creditors consists in the greater amount which may be realized under federal than under state control. The administration of the estate will require time and expense in the sale of the lands and in the collection of the personal assets, and the creditors are at the threshold of that administration. The practical result of the litigation therefore is this: that the door of the federal court was opened to creditors, and the administration of the estate assumed by that court. Whether such administration will produce better results than

like administration in the courts of the state is debatable, and, the estate still remaining to be administered, no human foresight can determine with absolute accuracy the amount that will be impounded for distribution among creditors of this partnership. We deem these observations pertinent, because it seems to have been assumed that a large estate, which the court below says is conservatively estimated at $300,000, had by this litigation been secured to creditors when it would otherwise have been lost to them,—an assumption for which we find no warrant in the record.

For the service thus rendered in procuring the adjudication of bankruptcy, the court allowed to counsel for the petitioning creditors the sum of $12,500. This allowance startles the judgment and challenges scrutiny. For a service occupying not more than one month in time, counsel are allowed as much as is paid to the president of the United States for three months' service, and more than is allowed to the chief justice of the United States for one year's service. This is not conclusive, for it may well be that these distinguished officials are inadequately paid, and it is entirely possible that a service may be rendered within the period of one month that would be entitled to much larger compensation than that allowed here. But the fact imposes upon us the duty to ascertain if, in the granting of this allowance, the court below has not been misled.

The policy of the present bankrupt act, in contrast with the provisions of the previous law, discloses clearly the design of congress that the administration of bankrupt estates should be had at the minimum of expense. Under the former law much scandal had arisen because of the large cost of administering estates. The present act, so far as it specifies the amount of fees of officers whose services may be required in execution of the law, fixes them at a low figure, possibly much lower than is compensation for the service; but it is not for us, for that reason, to disregard the law, or seek to thwart the design of congress, however inadequate we may think the compensation allowed. This thought is well expressed by the court below in the opinion filed. It is there said:

"The present bankrupt law was evidently intended to reduce to the lowest minimum the costs of administration, as regards fees of officers created by the act, as well as those of attorneys who may be called to assist the court in the preservation and distribution of the bankrupt estate."

The court below considered this allowance of $12,500 to come within this spirit of the bankrupt act. A review of the opinion discloses the erroneous grounds upon which judgment proceeded. The amount of the property involved is stated to be $458,000, and with real estate, charged to have been fraudulently conveyed, amounting to nearly half a million dollars. This result is obtained not only by counting as part of the estate property the title of which is disputed, and in respect to which no suit had been brought, and the issue of which, when brought, cannot be forecast, but also assuming as correct, and as though in fact realized in money, estimated values of real estate without deduction for the large incumbrances thereon, and counting as so much money every dollar of doubtful and bad debts stated in the schedules. The court also ignored the plain proposition that only

the residuum of individual estate, after payment of individual liability, is applicable to the payment of partnership indebtedness. It is no wonder, then, that the learned judge of the court below was lost in the maze of bewildering figures. He likened the service to that accomplished by a creditors' bill when assets, otherwise lost, are recovered. The fact seems to have been overlooked that in the one case there has been no recovery, the door of a particular forum being merely opened to suitors; while in the other case the door is not only opened, but is in fact closed upon actual results obtained and actual payment in money of honest debts,—not in delusive hopes held out to creditors by a long list of bad and doubtful claims, a large proportion of which in amount are claims against the insolvent debtors themselves. If the analogy of the creditors' bill holds good, the court would allow to counsel the sum of $12,500 for merely drawing and filing the bill, for that is all substantially which has thus far been accomplished in this case. The amount involved, however, is treated as of minor consideration, but stress is laid upon the supposed importance of difficult legal questions. The case was considered a pioneer one under the bankrupt act, and as one of first impression, and therefore a case of vast importance. This view is quite wrong. The questions involved are not novel. Whether the term "void," as employed in a statute, means absolutely void, or voidable merely, rests upon principles as ancient as the common law. The doctrine of estoppel in pais was not suggested for the first time in this litigation, and the precise question upon which the litigation was finally determined had been previously ruled by this court. We do not question the skill or ability of counsel in presenting these questions, but they traveled along beaten paths, and were not pioneers. It is evident that the district court also took erroneous views of the result accomplished, deeming the whole estate, by the mere fact of adjudication in bankruptcy, to have been saved to the creditors, when it would otherwise have been lost. Three cases are presented to our consideration as supporting this allowance. Banking Co. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915; Sanders v. Seelye, 128 Ill. 631, 21 N. E. 601; In re Treadwell (D. C.) 23 Fed. 442.

In the first of these cases the litigation continued during four years, and involved the collection of a large amount of unsecured income bonds of a railway company, and to charge the payment of them and of the unsecured indebtedness of the road upon the corpus of the property, which had passed to another company under certain claims, transfers, and foreclosure of mortgages. The amount of the indebtedness sought to be collected cannot be ascertained with any definiteness from the report of the Alabama court. The aggregate amount of the unsecured bonds and claims is stated by the supreme court to be very large. In the statement of the litigation involved, as appears from the case of Railroad Co. v. Branch, 59 Ala. 139, the unsecured indebtedness and mortgages amounting to $1,320,000 is stated to have been two-thirds of the value of a railway of 117 miles in length. Estimating the value of the road at the low figure of $15,000 a mile, the amount of unsecured claims would be $735,000. As stated by Mr. Justice Harlan:

"When the litigation was commenced, the unsecured bonds of the Montgomery & West Point Railroad Company were without any value in the financial market. That litigation resulted in their becoming worth all, or nearly all, that they called for."

There the supreme court allowed a fee of $17,580, reducing to that amount the allowance of $35,000 awarded by the circuit court.

In the second of these cases the dispute had respect to the value of legal services of three attorneys in a litigation concerning a large tract of land. There were four original bills and eight cross bills. The client held 195 bonds secured by a trust deed. We are unable to determine from the report of the case of Land Co. v. Peck, 112 Ill. 414, whether these bonds were of the par value of $500 or $1,000 each. The district court in its opinion and counsel here state the amount involved was $100,000. If the bonds were $500 each, this would be substantially correct. These bonds were secured by a trust deed, which the court of original jurisdiction had set aside. That decree was upon appeal affirmed by the appellate court, and upon further appeal to the supreme court the decree was reversed, and the security held valid, whereby the client secured his debt. The litigation continued during 10 years, and the amount allowed the three attorneys was $6,108.25.

In the third case claims to the amount of $30,000 were contested, which, if they had been allowed, would have "absorbed the whole assets of the estate then remaining undisturbed in the hands of the assignee." These claims were defeated after a protracted litigation. Over one-half of the creditors assented to allowance of the claim, only one-eleventh of the creditors opposed, and these opposing creditors, prior to the litigation, consented to payment of $5,000 in extinguishment of these claims, which was not accepted by the claimants; so that the allowance was no more than the opposing creditors were willing to have paid in extinguishment of the claim, and the amount allowed included all services rendered to the assignees touching the estate.

The mere statement of these cases shows that they wholly fail to sanction the allowance here involved.

We have stated that the estate available for the payment of partnership debts at a liberal estimate is $101,699.48. The creditors are but at the threshold of the administration of the estate. That administration will involve much labor and expense. If the allowance of $12,500 for merely opening the door to the administration of this estate is, within the spirit of the bankrupt act, the minimum of cost for that service, and the service of the trustees and their counsel in the difficult work which lies before them is to be compensated in the same spirit and by like standard, we may well indulge the fear that at its close this case will have its counterpart in the tragic and untoward ending of the noted case of Jarndyce v. Jarndyce. We are not inclined to impose upon the Seventh judicial circuit the baneful influence of that authority.

We have searched this record with care, that we might arrive at just judgment with regard to the amount that should be allowed for the service rendered. We have been solicitous to award full,

reasonable compensation, but careful to withhold inordinate allowance. We reach the conclusion that an allowance of $2,000 fully compensates the service. We have doubted if this be not too large a sum. We are not unmindful of the dignity of the profession, nor forgetful of the important duty of counsel. We would not underrate that duty. We would magnify his office. For exacting labor done, weighty responsibilities assumed, and great results accomplished, we would deal out compensation with liberal hand. We think, however, that the dignity and honor of the profession are not conserved, or its influence for good promoted, by excessive allowance for service. That would lend countenance to the suggestion sometimes heard that the commercial spirit of the age has invaded even the legal profession, to the impairment of its dignity, the blunting of its sense of honor; that a profession instituted for the maintenance of justice has become degenerate, and that its main calling now is a vulgar scramble for the "almighty dollar." We cannot bend our judgment to lend sanction to a foul aspersion.

The order is reversed, and the case is remanded, with directions to the court below to proceed in the matter in conformity with this opinion.