WILLIAM A. MAURAN *vs.* CROWN CARPET LINING COMPANY.

PROVIDENCE—NOVEMBER 25, 1901.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Bankruptcy, Receivers. Comity. State and Federal Courts.*

The fund which the trustee in bankruptcy is entitled to receive from the receiver of the bankrupt appointed in proceedings under Gen. Laws cap. 177, § 27, as amended, before any proceedings in bankruptcy had been taken, is not the whole fund, but only the balance over the receiver's fees and expenses which will be allowed to him by the State court.

(2) *Comity. State and Federal Courts.*

No consideration of comity requires that the State court should send its receiver to the federal court for the purpose of having his fees allowed, and mutual convenience requires that the matters preliminary to the ascertainment of the fund belonging to the trustee from the State court should be settled there.

Motion for entry of decree in cause decided in 23 R. I. 324.

STINESS, C. J.   Upon a motion for entry of a decree, under the opinion of this court filed November 13, 1901, deciding that the trustee in bankruptcy was entitled to receive from the receiver appointed in this case property of the respondent, adjudged a bankrupt since the commencement of this suit, the question has arisen whether this court should allow the receiver's fees and expenses and order him to turn over the balance, or whether he should be ordered to turn over the whole fund.

(1)   The petition under which the receiver was appointed was filed in pursuance of our statute, Gen. Laws cap. 177, § 27, by two of its stockholders, upon the ground that the estate and effects of the corporation were being misapplied and were in danger of being wasted and lost.

At that time no proceedings in bankruptcy had been taken, nor were any taken until after the receiver had been appointed.   The receiver at once advertised the property of the corporation in this State for sale on June 28, but on a suggestion to the court that a petition in bankruptcy had been filed June 26, the sale was postponed to July 12, 1901.

Meanwhile the creditor who had filed the petition in bankruptcy, and all other known creditors, filed a stipulation that the receiver should sell under his advertisement "for the purpose of saving expense."   The property was accordingly sold and debts were collected by the receiver, and on July 31, 1901, the trustee in bankruptcy, elected July 26, 1901, filed his petition in this court that the receiver be directed to deliver to the trustee the property and effects of the corporation.

We think it is clear that the petition under which the receiver was appointed was within the statutory jurisdiction of this court, independently of the bankruptcy act; but we have already decided in the previous opinion that, by virtue of the provision in the constitution of the United States, a national bankrupt act is paramount in the administration of bankrupt estates and that this court will not stand upon the

right of jurisdiction previously acquired, if such there be, but will surrender property in its hands to the forum in bankruptcy for administration under the bankrupt law. In so doing, however, the question of procedure arises whether the expenses already incurred shall be first paid out of the fund, or whether the whole fund shall be surrendered and our receiver sent to the federal court to ask for his fees and expenses.

We think that the former is the proper course, for several reasons.

A receiver is an officer of the court, holding property under its order for the benefit of the party entitled to it. All courts, therefore, hold that the receiver should be paid from the fund, as a part of the expense of the proceeding. It would greatly embarrass courts in securing good receivers if this rule should not be adhered to. They should not be subjected to the uncertainty, inconvenience, and delay of awaiting other proceedings and of seeking their pay from other courts.

It follows from this general rule that the fund or estate in the hands of a receiver, with reference to a party entitled to it, is the surplus over the charges allowed to the receiver. If so, we see no reason why the fund or estate for which a receiver is accountable to a trustee in bankruptcy is not the same surplus. If the fund had been adjudged to the bankrupt, that is all he could have received. Why should the trustee receive more? By the terms of the bankrupt law the trustee is vested only "with the title of the bankrupt as of the date he was adjudicated a bankrupt." In the case before us the receiver's charges had been incurred before that time. It is true that the court had not, before that time, passed upon or allowed the receiver's charges; but that is a matter incidental to the administration of the estate. It is a step towards ascertaining the amount of the estate to be turned over. It can be done after the adjudication in bankruptcy as well as before.

In *Eyster* v. *Gaff*, 91 U. S. 521, Mr. Justice Miller said: "The opinion seems to have been quite prevalent in many

quarters at one time that, the moment a man is declared bankrupt, the district court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance ; and it was a prevalent practice to bring any person, who contested with the assignee any matter growing out of disputed rights of property or of contracts, into the bankrupt court by the device of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view."

(2)    Applying the statement of this high authority to the case at bar, this court, having jurisdiction of the subject-matter and the parties, could at least perform its duty to ascertain the amount of the bankrupt's estate in its hands. The law does not seek to undo what has been done, except in cases of fraud or illegality, nor to prevent any court from doing any duty that properly belongs to it. We think that the allowance and reservation of the receiver's fees in this case is a part of our duty. It is suggested, and of course correctly, that the allowance would be made by the federal court upon the receiver's petition, but this is only an added reason that the law does not imply a prohibition upon a State court from doing the same thing. Nor does the consideration of comity require us to send our receiver to the federal court. The relations between the State and federal courts are sometimes delicate and perplexing. But for more than a century they have neither been strained nor troublesome. The true spirit of comity and the real relations which exist between them in many cases are aptly suggested by Ian MacLaren's description of the marriage relation : "Co-ordinate jurisdiction, with mutual subordination." In any view, however, we cannot conceive that there could be a breach of comity if one court should do the same thing that the other court would do.

Mutual convenience requires that the matters preliminary to the ascertainment of the fund belonging to the trustee

from this court should be settled here. He then takes it, and that matter is closed. Ordinarily the court appointing a receiver could measure more readily and accurately the amount of his services and expenses in the execution of its own decree.

We do not find that this question has been passed upon and reported, but the principles and reasons which we have stated satisfy us that the proper course is to turn over to the trustee the balance in the hands of the receiver.

A decree will be entered accordingly.

*Harry C. Curtis*, for petitioner.
*Arthur W. Davis*, for respondents.
*Dexter B. Potter*, for attaching creditors.
*Frederick A. Jones*, for trustee.
*Tillinghast & Tillinghast*, for certain creditors.