In re WILLIAMS.

(District Court, N. D. Ohio, W. D.   February 14, 1917.)

No. 2577.

1. BANKRUPTCY ☞144—RECEIVERS APPOINTED BY STATE COURT—DUTY AS TO ASSETS—RETENTION OF COMPENSATION.

A receiver appointed by the state court to take possession of the property of one subsequently and within four months adjudicated a bankrupt, no allowance of fees having been made before bankruptcy, must, the bankruptcy having superseded the proceedings in the state court, pay over all sums in his possession without deduction of his fees; his claims standing on the same basis as those of an agent in possession of the bankrupt's property, who may be required to make payments by summary order.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 237.]

2. BANKRUPTCY ☞484—PROCEEDINGS—ALLOWANCES—ATTORNEY'S FEES.

While one reasonable attorney's fee for professional services actually rendered to petitioning creditors in case of involuntary bankruptcy is allowed as of right, attorneys who render services to a receiver appointed by the state court subsequent to bankruptcy have no legal claim for fees, though such services were a benefit to the estate; the fees not being allowed and paid before bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 895, 896.]

3. BANKRUPTCY ☞482(3)—FEES—ATTORNEY'S FEE.

The amount of the fee to which the attorney for the petitioning creditors in involuntary cases is entitled rests, in the absence of direct evidence as to the value of the services in the legal discretion of the court, but not in unrestrained discretion.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897.]

4. BANKRUPTCY ☞20(2)—PROCEEDINGS—STATE COURT.

Where, more than four months before the filing of the bankruptcy petition, the state court acquires jurisdiction in receivership of the bankrupt's estate, its jurisdiction cannot be interfered with by the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23.]

In Bankruptcy. In the matter of the bankruptcy of Norman Williams. On question certified by referee. Question answered, and trustee in bankruptcy held entitled to receive all funds in possession of the receiver in the state court at the time of the filing of the petition in bankruptcy.

A. B. Johnson, of Kenton, Ohio, for trustee.
Eugene T. Lippincott, of Lima, Ohio, for bankrupt.

KILLITS, District Judge. This case is certified by H. D. Grindle, referee, for the decision of the court on the following question:

"May the receiver appointed by a state court, and his attorney, be paid fees allowed them for their services by the state court, out of the funds in the possession of said receiver; said allowance having been made after an adjudication in bankruptcy and upon the filing of a report by said receiver in the state court?"

The facts are as follows: On October 27, 1915, a receiver appointed by the common pleas court of Hardin county, Ohio, took possession of the property of Norman Williams and conducted the business until

January 28, 1916, when petitions and schedules were filed in this court, at which time the receiver had in his possession, as the proceeds of sales of certain assets of the bankrupt, the sum of $4,049.11. February 5, 1916, *after adjudication of bankruptcy,* the state court allowed and ordered said receiver to pay certain expenses of said receivership, including an attorney's fee in the sum of $500, compensation to said receiver in the sum of $600, and other expenses and costs in the sum of $650. February 21, 1916, the receiver filed his final report in the common pleas court and paid to the clerk of courts of Hardin county, Ohio, further costs in the sum of $36.63. A trustee in bankruptcy was appointed February 12, 1916, and forthwith demanded of the receiver all moneys and property which had come into his hands belonging to the estate. February 21st the receiver tendered $2,261.55, balance after paying costs and state court allowances, in full settlement, which the trustee refused to accept, claiming the entire amount on hand ($4,049.11) at the time the petition in bankruptcy was filed.

[1-3] In Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, it is held that, where the property of a bankrupt has come into the hands of a third party, before the filing of the petition in bankruptcy, as the agent of the bankrupt, and to which he asserts no personal adverse claim, summary proceedings lie to compel the surrender of the property to the trustee in bankruptcy, and a mere refusal by the third party to deliver the property does not oblige the trustee to resort to a plenary suit, because such refusal does not indicate that the holding was adverse when the petition in bankruptcy was filed. In Louisville Trust Company v. Comingor, 184 U. S. 19, 22 Sup. Ct. 293, 46 L. Ed. 413, being contemporaneous with that of the Mueller Case, it is held that, when the assignee for creditors has had his expenditures, fees, and commissions determined before bankruptcy of his assignor in the usual way by the state court appointing him, his claim for expenses thereupon paid, and his right to retain fees and commissions so allowed, are adverse, wherefore he is subject only to a plenary action, which the bankruptcy court entertains only by consent; the court citing Bardes in Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175.

The important difference in facts between the instant case and the case just referred to arises because here Williams' assignee had his fees and expenses allowed him by the state court *after* bankruptcy had intervened. If, then, an assignee by operation of state insolvency laws occupies but the status of an agent of the insolvent, when administration in bankruptcy begins, the Comingor Case does not control. This question has been decided for us by our own Circuit Court of Appeals, saying (Matter of Hays, 24 Am. Bankr. R. 691, 697, 698):

"In our opinion, upon the case presented on this review, the District Court had jurisdiction to make the order complained of. The assignment by Hays to Stewart did not constitute the latter an assignee for value, but simply made him the agent of Hays for the distribution of the proceeds of the property among the latter's creditors. Being such agent, his possession was that of the principal, and he therefore did not hold adversely to the bankrupt, or, to the latter's trustee, by the mere fact that he held in his hands funds received by him under the assignment."

The opinion cites the Mueller Case and Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, and distinguishes the case from the Comingor Case, which the same court decided, to be affirmed by the Supreme Court. The question has been decided also in Matter of Standard Fuller's Earth Company (D. C. Ala.) 186 Fed. 578, 26 Am. Bankr. R. 562, in language as follows:

"* * * On August 18, 1910, the receiver was appointed. On the 26th of November, 1910, the Standard Fuller's Earth Company was adjudicated bankrupt by this court on the petition of creditors of the company. * * * It appears that the chancery court at Mobile, on January 23, 1911, made an order allowing said McMillan & Grayson, solicitors for complainant in the cause in that court, a fee of $1,500, declaring it to be a reasonable and proper allowance to them, and authorizing and instructing the receiver in the cause to pay the same and the costs of the cause remaining unpaid after applying the funds in the hands of the register of the court deposited as security for the costs, the payment to be made out of any funds available for that purpose. It was further ordered by that court that the receiver and his bondsman, after the payment of these fees and the costs of the cause, be and are relieved and dismissed from all further accounting of his administration, as such receiver. And the cause was ordered to be dropped from the trial docket of that court. * * * I cannot agree with the contention of petitioners that the fee allowed them by the chancery court was a priority claim, constituting a lien on the assets of said bankrupt company. And I do not find that said court specifically ordered the same to be paid out of the assets of the company. The order directed that such payment be made out of any funds available for that purpose. *This order was made on the 23d of January, 1911, about two months after the said corporation had been adjudicated a bankrupt, and when all of its assets had by operation of law passed under the exclusive jurisdiction and administration of the bankruptcy court.* The state court proceedings had been superseded by the proceeding in bankruptcy, and its action in the premises, if its purpose was to fix a lien on said assets, was coram non judice."

The law unquestionably permits the allowance of one reasonable attorney's fee for professional services actually rendered to the petitioning creditors in involuntary cases. The attorney is entitled to this reasonable fee as a matter of right. The amount, of course, must be reasonable, and be determined upon the evidence of the service performed and of its value. And if there is an absence of direct evidence of its value, the court determines it as a matter of discretion; that is, the amount to be allowed rests in legal judgment and judicial discretion, but not in unrestrained discretion. See In re Curtis et al. (C. C. A. 7th Cir.) 4 Am. Bankr. R. 17, 100 Fed. 784, 41 C. C. A. 59; Smith v. Cooper (C. C. A. 5th Cir.) 9 Am. Bankr. R. 755, 120 Fed. 230, 56 C. C. A. 578; In re Zier & Co. (C. C. A. 7th Cir.) 15 Am. Bankr. R. 646, 142 Fed. 102, 73 C. C. A. 326. In Re Standard Fuller's Earth Company, supra, the court states that such fee is provable and entitled to priority:

"(1) When the services were rendered the petitioning creditors in involuntary cases; (2) to the bankrupt in involuntary cases while performing the duties prescribed by the act; and (3) when the services of an attorney are really necessary and required by a receiver or trustee in the performance of their duties in the care and administration of the bankrupt estate. Such fees to be allowed as part of the expense of the care and preservation of the estate."

In the Matter of Zier & Co., supra, the court held that the fact that attorneys were employed by a receiver appointed in a state court pro-

ceeding against a corporation and rendered useful professional serv-
ices therein *established no legal claim for allowance of fees out of the
estate in bankruptcy of the defendant in the state court proceeding,
by way of lien upon the assets or otherwise,* as they are not performed
on behalf of the bankrupt nor in the bankrupt administration. The
court further says:

"The bankruptcy jurisdiction, when properly invoked, supersedes the prior
proceedings in the state court for winding up the corporation, 'as to which the
jurisdiction is not concurrent' (In re Watts and Sachs, 190 U. S. 1, 27 [23
Sup. Ct. 718, 47 L. Ed. 933] 10 Am. B. R. 113), so that the rule upheld in,
Randolph v. Scruggs, supra, in reference to a voluntary assignment for the
benefit of creditors, is equally applicable to this claim. Such claim is allow-
able only upon equitable considerations for services from which the estate in
bankruptcy has derived benefit, and to the extent only that they were bene-
ficial in fact."

In the Matter of Rogers (D. C. Ga.) 8 Am. Bankr. R. 723, 116
Fed. 435, the court observed that the federal court will decline to
recognize the authority of the state court to incumber assets of a
bankrupt for the fees and expenses of its officers entered *after* the
proceedings therein were suspended by the bankruptcy proceedings.
The court said:

"If the assets are delivered to the trustee by the receiver of the state court,
this court will consider any application for compensation which may be made
by officers of the state court, and; if allowable, will grant suitable compen-
sation."

In Wilbur v. Watson (D. C. R. I.) 7 Am. Bankr. R. 54, 111 Fed.
493, it was held that assignees under a general assignment, which was
of itself an act of bankruptcy, and constructively fraudulent and in
violation of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat.
544), are not entitled to compensation from the estate for their serv-
ices rendered prior to the filing of the petition in bankruptcy against
the assignor, and they cannot retain any sum as such compensation
from the proceeds of property in their hands. Such proceedings in
state courts have no more validity than have proceedings in a state
court when once a cause has been properly removed therefrom into
a federal court. In re Curtis, 1 Am. Bankr. R. 440, 100 Fed. 784,
41 C. C. A. 59; Steamship Co. v. Tugman, 106 U. S. 118, 1 Sup. Ct.
58, 27 L. Ed. 87.

In Randolph v. Scruggs, 190 U. S. 533, 536; 540, 23 Sup. Ct. 710,
47 L. Ed. 1165, 10 Am. Bankr. R. 1, a case taken to the Supreme
Court on a certificate from the United States Circuit Court of Ap-
peals for the Sixth Circuit, the material facts are as follows: An as-
signee was appointed under the general assignment law of Tennessee
on the 13th day of August, 1900. The assignee accepted the trust
and entered into possession of the estate. The deed of assignment pro-
vided that the assignee should pay reasonable counsel and attorneys'
fees for preparing the deed and for advice and services to be furnished
and rendered the assignee in the course of the administration of the
trust. Within four months after this deed of assignment, the assignor,
upon a petition of his creditors, was adjudicated a bankrupt, and the

deed was set aside as in contravention of the Bankruptcy Act. A trustee was chosen and took possession of the assets of the bankrupt. A claim was filed against the bankrupt estate for professional services rendered the bankrupt in preparing the deed of general assignment and for services in advising and counseling the assignee, for legal services in defense of a suit in the state court wherein it was sought to have the corporation wound up as an insolvent corporation, and for services rendered in resisting the adjudication in bankruptcy. The referee found upon evidence, and certified, that the services had been rendered as claimed, and were reasonable and worth the amount claimed, but that they did not constitute expenses allowable as a preference, and were not otherwise a lien. He allowed fees for services rendered the corporation in preparing the general assignment, but disallowed the fees for the other services claimed. The District Judge sustained the referee so far as he held the claim to be nonpreferential, and adjudged that none of the items constituted a debt provable for any purpose against the bankrupt estate:

"Upon this state of facts this court [C. C. A. 6th Cir.] desires the instruction of the Supreme Court, that it may properly decide the questions of law thus arising:

"(1) Is a claim for professional services rendered to a bankrupt corporation in the preparation of a general assignment, valid under the law of Tennessee, entitled to be paid as a preferential claim out of the estate of the corporation in the hands of a trustee in bankruptcy, when the corporation was adjudicated an involuntary bankrupt within four months after the making of the assignment, and the assignment set aside as in contravention of the bankrupt law?

"(2) Is a claim for professional advice and legal services rendered such an assignee, prior to an adjudication of bankruptcy against the assignor, the assignment providing that the costs and expenses of administering the trust should be first paid, entitled to be proven as a preferential claim against the bankrupt estate?

"(3) Is a claim against such an assignee for legal services rendered at his employment in resisting an adjudication of involuntary bankruptcy against the assignor allowable as a preferential claim when the necessary effect of the adjudication would be to set aside the assignment under which the assignee was acting?

"(4) If not entitled to be allowed as preferential claims, may either of the items described in the foregoing questions be proven as unsecured debts of the bankrupt corporation?"

Answering, the Supreme Court said that the assignment was not illegal. It was permitted by the law of the state, and cannot be taken to have been prohibited by the Bankruptcy Act absolutely in any event, whether proceedings were instituted or not. It had no general fraudulent intent. It was voidable only in case bankruptcy proceedings should be begun. The court in the opinion says:

"The more difficult question is how to deal with the services rendered to the voluntary assignee. The claim for them must be worked out through the assignee, and cannot be put higher than his claim for allowances, supposing that they had been paid. We may assume that there is no question of form before us, and that whatever the appellants properly might have been paid by the assignee they may prove for now. * * * But it has been held that the assignee, even of a corporation, cannot be allowed anything for his services before the filing of the petition in bankruptcy. See, e. g., In re Peter Paul Book Co. [D. C.] 104 Fed. 786. So far as this opinion rests on constructive

fraud we have indicated above that it does not command our assent. The case would be different if the assignee were party to an actual fraud. * * * But the assignee is acting lawfully in what he does before proceedings in bankruptcy are begun, and although it may be assumed that the avoidance of the assignment relates back to the date of the deed, still so far as his services, or services procured by him, tend to the preservation or benefit of the estate the mere fiction of relation is not enough to forbid an allowance for them. * * * This is the doctrine of the state courts with reference to the operation of insolvent laws upon voluntary assignments and of the better considered decisions under the bankrupt laws [citing a number of cases]. If beneficial services are allowed for, they are to be regarded as deductions from the property which the assignee is required to surrender, and in that way they gain a preference." Platt v. Archer, 13 Blatchf. 351, Fed. Cas. No. 11,214; In re Scholtz (D. C.) 106 Fed. 834, 5 Am. Bankr. R. 782; White v. Hill, 148 Mass. 396, 19 N. E. 407; Clark v. Sawyer, 151 Mass. 64, 23 N. E. 726.

But the court said:

"We are not prepared to go further than to allow compensation for services which were beneficial to the estate. Beyond that point we must throw the risk of his conduct on the assignee, as he was chargeable with knowledge of what might happen. It does not appear how far the services to the assignee were beneficial. Therefore the questions of the Circuit Court of Appeals cannot be answered in full. But the principles as to which it desired instruction may be stated sufficiently for the disposition of the case upon a subsequent finding of facts. None of the claims is entitled to preference under the deed. The charge for the preparation of the assignment properly may be proved as an unpreferred debt of the bankrupt. The services to the voluntary assignee may be allowed so far as they benefited the state, and inasmuch as he would be allowed a lien on the property if he had paid the sum allowed, the appellants may stand in his shoes and may be preferred to that extent. No ground appears for allowing the item for services in resisting an adjudication of bankruptcy. * * * We answer the questions as follows: (1) No. (2) Not under the deed, but, so far as the assignee would be allowed for payment of the claim, the claim may be preferred in the right of the assignee. (3) Not on the facts appearing in the certificate. (4) The charge for the preparation of the deed may be proved as an unsecured claim."

Commenting on this, the court in the Matter of Standard Fuller's Earth Company, supra, said:

"I can perceive no difference in the application of the rule declared in Randolph v. Scruggs, supra, and other authorities, to the case of a general assignment and to a proceeding in a state court instituted by a stockholder in an insolvent corporation against said corporation, praying an administration and winding up of said corporation, and obtaining the appointment of the treasurer and general manager of the corporation as receiver in the cause. The bankruptcy jurisdiction, when properly invoked, supersedes the prior proceedings in the state court for the winding up of said estate, as to which the jurisdiction is not concurrent. In re Zier & Co., Wilbur & Watson, and other authorities, supra."

And therefore, in final disposition of the case, this Georgia District Court said, in language in which we must concur:

"My opinion is that the referee erred in decreeing that the compensation of the receiver in the state court and of his attorneys therein as fixed and allowed by the state court is a priority claim against the estate in bankruptcy, and the same is reversed, and the cause is remanded to the referee, to determine the amount of compensation that should be allowed the attorneys for professional services rendered in the bankruptcy proceedings, which is a priority claim to be paid out of the assets of said estate; also to ascertain and determine the expenses incurred by the receiver in the state court in the preservation and care of the assets of the estate turned over to the bankruptcy

court. Such expenses to include reasonable compensation for legal services required and actually rendered the receiver, and which were beneficial to the estate. The claim for such professional services is to be claimed and preferred in the right of the receiver, and as part of his expenses in the preservation and care of the estate."

Loveless v. Southern Grocer Co., 20 Am. Bankr. R. 181, 159 Fed. 415, 86 C. C. A. 395, seems from the syllabus to hold contrary to the cases just cited, but a careful consideration of the opinion suggests that the decision is based on an entirely different state of facts.

[4] There can be no doubt that, if the state court acquires jurisdiction more than four months before the bankruptcy petition is filed, its jurisdiction cannot be interfered with. 1 Loveland on Bankruptcy (4th Ed.) p. 142, and cases there cited. In the Matter of Watts & Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933, Mr. Justice Fuller said:

"The operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The Bankruptcy Law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive."

The question of the referee as certified to this court is therefore answered in the negative. The receiver of the state court has not the authority to take from the assets in his possession at the time of the adjudication in bankruptcy the fees and expenses thereafter allowed by the state court and turn over the balance to the trustee, but should turn over to the trustee the property just as it was at the date of adjudication, without diminution.

In view of the comity that exists between this court and the state court, the trustee should first request the receiver to turn over to him the moneys withheld, as aforesaid, at the same time giving him a copy of this opinion, in order that he may be advised as to this court's conclusions on the question referred. If this request is refused by the receiver, then the trustee in this cause should make an application to the appropriate state court, requesting that court, in consideration of the comity existing between this court and the state courts, to direct its receiver to pay all sums in his hands at the time of bankruptcy, including fees and expenses allowed by it as aforesaid to the trustee in this cause, attaching to such application a copy of this opinion. The trustee will then report to this court the reply of said state court and said receiver, together with a statement of his expenses incident to his application to the state court that the same may be collected from the receiver if the judgment of this court so directs.

The court in Mauran v. Carpet Lining Co., 23 R. I. 344, 50 Atl. 387, 6 Am. Bankr. R. 734, upon a similar state of facts, reaches a conclusion differing from that at which we have attained; but, after careful consideration of all the cases, it is clear that the decided weight of authority, practically the unanimous holding of the federal bench, is in accordance with our decision.

We are indebted to B. C. Miller, clerk of this court, and a member of the bar of this court, for the briefing in this matter.