### SMITH et al. v. COOPER et al.

(Circuit Court of Appeals, Fifth Circuit. February 24, 1903.)

#### No. 1,208.

1. INVOLUNTARY BANKRUPTCY—ATTORNEYS FOR CREDITORS—FEES—ALLOWANCE.

Petitioners were attorneys for creditors in involuntary bankruptcy proceedings, and obtained an order adjudging the debtor a bankrupt. A receiver in insolvency having been appointed in the state court, injunction proceedings were brought by such attorneys to compel the receiver to turn over the property to the trustee in bankruptcy. This proceeding was contested, and such attorneys followed a decree in their favor to the Circuit Court of Appeals, where the decree was reversed. Thereupon the attorneys applied to the United States Supreme Court for certiorari to review the decree of the Court of Appeals, which application was refused; whereupon, pending an application to the state courts for an order requiring the receiver to surrender the assets, a compromise was effected, by which $2,500 was paid by the receiver to the trustee, which was all the money the trustee received from the estate. On an application for the allowance of attorney's fees, a master allowed the sum of $1,000, which was not objected to by any of the creditors of the estate. Held, that the judgment of the district court in reducing such fees to 10 per cent. of the amount remaining in the hands of the trustee, after payment of costs and expenses, which amounted to $196.68, should be amended, and a fee of $1,000 allowed.

Appeal from and Petition for Revision of Proceedings in the District Court of the United States for the Southern District of Georgia.

John R. L. Smith and J. T. Hill filed in the court below in Re Macon Sash, Door & Lumber Company, Bankrupt, their application for payment out of the bankrupt estate of their fees as attorneys for the petitioning creditors, and for services rendered under employment of authority of the court to the receiver and trustee in said bankruptcy matter. The court referred the application to a special master, with directions to "take testimony and report * * * the approximate amount of compensation which should be allowed to petitioners." The special master, after due notice to the trustee and attorneys for the bankrupt and all creditors, proceeded to take testimony. No evidence was offered except that for petitioners, which consisted of testimony by one of them as to the services performed by them, and the testimony of two attorneys, who testified that they were engaged on the opposite side of the litigation, and well knew the services rendered, and the value thereof, and that such value was $1,500 to $1,750. There was no conflict of evidence, nor was there anything in the record tending to discredit the witnesses for petitioners. The special master filed a report, to which was attached the evidence taken before him. This report contained a finding at length of the services rendered by petitioners and the propriety thereof, and concluded that if petitioners had been successful in their efforts "it would have been but proper that they should receive full and complete value for their services. But while recognizing that the value of their services must exceed any amount which can now be allowed them; considering that but sixteen hundred dollars approximately, outside of costs fixed by law and their expenses to be reimbursed, is now on hand for all compensation; and considering that, though costs of the bankruptcy court must necessarily have priority, it is but just that claims of creditors should not be wholly overlooked and disregarded, as must be were greater compensation allowed—I find that petitioners are entitled to $1,000, $700 to both as attorneys for petitioning creditors, and $300 for petitioner Smith for services to the receiver, trustee, and marshal." On filing this report, on September 5, 1902, the trustee and attorneys for the bankrupt and all creditors entered an acknowledgment of notice of the report, and a consent that the same might be passed upon by the court forthwith. There were no exceptions filed to the master's report, nor had any one ever made any objection or resistance whatever to petitioners' claims.

The court delivered an opinion as follows: "The court is always very glad, indeed, to allow counsel in all proper cases fees which adequately compensate them for the skill and ability with which their professional services are rendered. Estimated upon this basis, the compensation of Mr. Smith in this case would be very large. There are, however, a good many considerations which must influence the court in fixing the fees of the attorneys. Since the enactment of the bankruptcy law we have habitually fixed the fees, not only of counsel, but of receivers, referees, and others, upon an economical scale. In fact, from the beginning the court has been pretty regularly assailed with complaints that such allowances for compensation have not been sufficiently large. Perhaps these complaints were at times justifiable. We have, however, felt that it was due the parties and due the law that there should be an economical administration of bankrupts' estates. Now, in this case, application is for a fee of over fifty per cent. of the amount in the hands of the trustee. This is only about $2,000, and yet two attorneys have testified that it should be subjected to a charge of $1,500 counsel fees. The master allows over fifty per cent. of the actual amount of the recovery. I do not think it is proper for court to make any such allowance. While doubtless the services of counsel were worth the amount allowed, if considered with sole regard to the skill and learning displayed, yet the court must have in consideration the amount which was secured by those services for the general creditors. It is one of those cases in which counsel take a certain degree of chance. Had they been successful they would, without doubt, have received a considerable enlargement of the compensation which the court will allow; but they were unsuccessful. The effort to defeat the bankruptcy law was successful. I cannot, therefore, regard myself as at liberty to consider solely the services of counsel for petitioning creditors. All I can allow is 10 per cent. upon the amount in the hands of the trustee; that is, about two hundred dollars. It will be so ordered"—and thereupon entered

a judgment fixing petitioners' fees for all services at $196.68, being 10 per cent. of the amount remaining on hand after paying other costs and expenses.

Jno. R. L. Smith, for petitioners.

Before PARDEE and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). In considering an appeal from the allowance of attorney's fee in a case of involuntary bankruptcy, the Circuit Court of Appeals for the Seventh Circuit (In re Curtis et al., 41 C. C. A. 61, 100 Fed. 785, 786), said:

"In the administration of an estate in bankruptcy the law permits the allowance of 'one reasonable attorney's fee for the professional service actually rendered * * * to the petitioning creditors in involuntary cases.' 30 Stat. c. 541, § 64b, subd. 3 [U. S. Comp. St. 1901, p. 3447]. The act grants an appeal to this court from an order of the district court sitting in bankruptcy allowing or rejecting any claim exceeding $500 against the bankrupt estate. 30 Stat. c. 541, § 25a, subd. 3 [U. S. Comp. St 1901, p. 3432]. This clearly lodges in the appellate court the right to review the allowance of any such claim. The attorney for the petitioning creditors is entitled to this reasonable fee as of right. Its allowance or disallowance is not matter of discretion. So, also, the amount to be allowed does not rest in mere discretion. The amount must in all cases be reasonable, to be determined upon evidence of the service performed and of its value, and, in the absence of evidence of its value, by the court from knowledge of its worth. The amount to be allowed rests in legal judgment and judicial discretion, but not in unrestrained discretion, and that judgment and judicial discretion are subject to review. We are loath to disturb a finding upon a question of this character, unless fully persuaded that the judgment of the court was founded in misconception of the ground upon which the allowance should be based, or, if proceeding upon correct grounds, that the amount allowed was largely excessive or greatly inadequate. The question is one of delicacy, but the duty of review may not be put aside. It becomes us, therefore, to inquire with respect to the matter in hand concerning the character and value of the service rendered, and of the grounds upon which the allowance was predicated. The elements which enter into and should control judgment upon the value of professional services we think to be these: The nature of the service, the time necessarily employed therein, the amount involved, the responsibility assumed, and the result obtained."

In this view of the law, both as to the right of appeal and the determination of the amount of a reasonable fee for services actually rendered in involuntary bankruptcy, we fully concur.

The nature of the services rendered by appellants herein, the time employed, the amount involved, the responsibility assumed, and the result obtained are undisputed, and are found by the master as follows:

"As appears from their petition, and from the statement of Mr. John R. L. Smith, on November 17, 1900, John R. L. Smith and J. T. Hill, representing certain petitioning creditors, filed in the District Court a petition praying that the Macon Sash, Door & Lumber Company might be adjudged a bankrupt. Previous to that time the Exchange Bank of Macon had instituted in the superior court a proceeding, under which a receiver had been appointed, who had taken possession of the assets of the company. In order to prevent the administration of these assets for the benefit of the Exchange Bank on mortgages which it held, under the bill in the superior court this bankruptcy proceeding was instituted by Mr. Smith and Mr. Hill for the benefit of the unsecured creditors, with the purpose of procuring an adjudication, and getting the property and mortgages then in the superior court within the jurisdiction of the bankruptcy court. This petition having been assigned for hearing on November 25, 1901, in the meantime, having reason to believe that the parties in the superior court were intending to proceed with the case in that court, and have the property sold and administered while the proceedings in bank-

ruptcy were pending, they filed a bill on behalf of petitioning creditors, praying that the plaintiffs in the state court be enjoined from further prosecuting their suit or procuring a sale of the property, and such injunction was accordingly granted by the bankruptcy court. Afterwards, having ascertained that the state court receiver was proceeding to sell certain parts of the property, they filed another bill in the bankruptcy court, praying that the receiver be enjoined from the alleged contemplated acts; whereupon this court entered an order enjoining the said receiver as prayed for. On November 25, 1901, the petition for adjudication came on for a hearing before the court, and, attorneys for the bankrupt having filed an answer and a demand for jury trial, considerable time and labor seems to have been expended by the petitioners, in their preparation for this trial, in examining the law and authorities bearing upon the issues involved, and especially in securing evidence to prove the fact of insolvency. This labor seems to have been performed by them before their knowledge of the withdrawal of the answer and demand filed by the company's attorneys, which was subsequently done, and the company consented to be adjudged a bankrupt, as prayed for. After such adjudication, on the 26th day of November, attorneys for petitioning creditors filed another bill in equity in aid of the bankruptcy proceeding, wherein they set forth the proceedings in the superior court, and alleged that such proceedings in the state court were void for want of jurisdiction in that court to entertain insolvency proceedings, and prayed that the mortgages of the Exchange Bank, upon which these proceedings were predicated, might be set aside; the said judgments controlled for the benefit of the general bankrupt estate; the said bank required to account for preferences received; that the parties and receiver in the state court be perpetually enjoined from proceeding with the administration of the assets; and that the said bankrupt court should take possession of all the assets and effects of said bankrupt for administration in this court. Upon this bill this court entered an order enjoining the parties and receiver in the superior court, and issued a warrant to the marshal requiring him to seize and take possession of the assets and effects of the bankrupt. This bill seems to have formed the basis of the more extended and universal part of the services rendered by the petitioners, and marks the second stage of the litigation—the effort to secure possession of the assets from the receiver of the state court, and to transfer them into the hands of the bankruptcy court. The receiver of the superior court, upon demand of the marshal, having refused to surrender the assets and effects of the bankrupt in his custody, and the marshal having reported such refusal of the court, attorneys for petitioning creditors filed a petition reciting the aforesaid facts, and praying a rule against the receiver, requiring him to show cause why he should not surrender such assets and effects, or, in default thereof, be punished as for contempt. To this Mr. Carling filed an answer, contending, in substance, that, the superior court having jurisdiction in the premises, the bankruptcy court did not have jurisdiction or authority to wrest the property from the officers of that court under principles of comity between the two courts. Upon this great labor and care seems to have been expended by petitioners in preparing for the hearing of a case, which involved questions of tremendous importance. On December 6, 1901, your honor, after hearing argument, delivered an opinion sustaining the main contention of the petitioners, and passed an order peremptorily directing the receiver to surrender the assets to the marshal; which the receiver still declining to do, the court ordered him to be attached and imprisoned for contempt, until he should purge himself of such contempt by the surrender of the assets, but directed a suspension of such order for 10 days, to allow his counsel time to make application for review to the Circuit Court of Appeals. And such petition having been filed by his attorneys, and made returnable on January 7, 1902, at New Orleans, the case came on for argument on that day. With the judgment and decision of the honorable District Court in their favor, it was wholly necessary and proper that counsel for respondents should proceed further in that court, wherein the judgment and decision of the District Court was sought to be reversed. The entire time preceding the hearing at New Orleans seems to have been devoted by petitioners to work on this case, and in its preparation the more arduous part of their services were expended. A brief

was prepared by them for the appellees, and comprised 39 printed pages. Mr. Hill and Mr. Smith both went to New Orleans. After argument, which consumed a day and part of another day, in the Circuit Court, another supplemental brief was filed by them, containing 17 printed pages. Afterwards, upon reversal of the decision of the District Court, 'inasmuch as two courts had decided differently on the question,' and the Circuit Court seemed to rule with them on the propositions of law for which they contended, 'but simply refused to admit the conclusion' which attorneys for petitioning creditors thought necessary to follow from those principles, they 'deemed it necessary and proper to carry the case to the Supreme Court of the United States.' In this effort to secure the granting of certiorari by that court, a petition of 29 printed pages was prepared, 'to see to the proper filing of the petition and brief, to arrange for printing them, and see that the case was properly entered on the docket for presentation to the court'; the second, 'to present the application and briefs to the court, the rules requiring that they should be presented in open court, at the motion hour, on motion.' Preparing this petition for certiorari required considerable thought and investigation on the part of petitioners. After taking this application under advisement, the Supreme Court, not being bound to grant a writ of certiorari, entered an order declining to grant the writ. Afterwards, it being indicated by the Circuit Court of Appeals as the proper procedure, counsel for petitioning creditors filed a petition in this court, praying that a receiver be appointed, and directed to make application to the superior court for an order requiring its receiver to surrender the assets and effects in his possession. And John R. Cooper having been appointed receiver by your honor, and authorized to make such application, and afterwards, in his capacity as trustee, duly made such application to that court. But, pending this application of the trustee, the superior court having authorized its receiver to propose a compromise of the controversy as to the possession of assets and effects, and such offer having been made by T. J. Carling, its receiver, to the said John R. Cooper, trustee, and the said trustee having been authorized and directed by your honor to accept such compromise, the case was thereupon compromised by the payment of the said Carling into the hands of the trustee of $2,500, in full settlement of all claims and demands of the said trustee against the property and assets in the hands of the said Carling, receiver."

It thus appears that the services for which compensation is claimed were actually rendered in the bankruptcy court, in this court, and in the Supreme Court of the United States; that they were meritorious, and so far successful that all the funds brought into the bankruptcy and in the hands of the court for distribution were thereby obtained.

The section of the bankruptcy act of 1898 [U. S. Comp. St. 1901, p. 3447] authorizing and requiring the payment of such fees as claimed herein is headed "Debts which have Priority," and clause "b" provides that such fee shall be paid as a part of the costs of administration, and before wages due workmen, etc. By the uncontradicted testimony of two competent witnesses, the services were shown to be worth at least $1,500. The master found, in consideration of this evidence and for other reasons considered valuable by him, that the petitioners were entitled to the sum of $1,000. In considering the master's report, the learned judge seems to concede that for the services actually rendered the amount allowed by the master was not in excess of a reasonable fee, but, for considerations of economy and the necessity of preserving a good portion of the fund recovered for the benefit of creditors, he considered it proper to reduce the amount recommended by the master, and allow only a small percentage, not of the amount actually recovered, but upon the amount left in the hands of the trustee after paying certain of the costs. While

we agree with the learned judge of the bankruptcy court that to aid the parties and under the law there should be an economical administration of the bankrupt's estate, we are unable to concur with him in his reasons for reducing the fee to be allowed appellants in this case.

When we consider that the professional services of the appellants were continuous, arduous, running through courts in Macon, New Orleans, and Washington City, and that without such services there would be no funds at all in the hands of the court to distribute; that under the statute appellants are allowed the payment of a reasonable fee as a prior claim; that the amount reported by the master as a reasonable fee was supported by the evidence, and was apparently agreed to by all the parties in interest, as appears by the submission of the master's report without objection—we are of opinion that the amount so fixed by the master should be allowed.

It is therefore ordered and adjudged that the decree appealed from be amended so as to provide that the amount allowed J. T. Hill and John R. L. Smith for all the services rendered by them as attorneys in the matter of the Macon Sash, Door & Lumber Company, bankrupt, be fixed at the sum of $1,000, and as amended that said decree be affirmed. The costs of this appeal, including costs of the transcript and printing, to be paid by John R. Cooper, trustee.

The petition to revise proceedings is dismissed, at the costs of the petitioners.