## In re HUDDLESTON.

### (District Court, S. D. Georgia, W. D. May 26, 1908.)

1. BANKRUPTCY (§ 114\*)—RECEIVERS—APPOINTMENT.

    After adjudication of voluntary bankruptcy, an application by creditors, in which the bankrupt unites, to appoint a receiver or custodian to preserve the assets of the estate, otherwise wholly unprotected, will usually be granted, especially in the absence of any charge of fraud or collusion.

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and where the creditors and other persons interested make no objection whatever.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

**2.** BANKRUPTCY (§ 114*)—RECEIVERS—SERVICES.

When a receiver is designated by the court, the subsequent election by the creditors of the same person as trustee is evidence of the fitness and competency of such person.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*]

**3.** BANKRUPTCY (§ 482*)—ATTORNEYS—COMPENSATION.

Where an application for fees for a receiver and for attorneys has been referred to a competent special master, where there are two hearings, and where the evidence discloses that the attorneys have rendered meritorious services, nearly trebling the value of the estate, such attorneys are entitled to a fee, justly compensatory for such services. Smith v. Cooper (5th C. C. A.; opinion by Circuit Judge Pardee) 120 Fed. 230, 56 C. C. A. 578.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 482.*]

**4.** BANKRUPTCY (§ 484*)—RECEIVERS—COMPENSATION—EXCEPTIONS TO REPORTS OF SPECIAL MASTERS—WHERE NO EXCEPTIONS.

Without objection to the special master's report on this subject, the compensation allowed such receiver, if not exorbitant, should be approved. Smith v. Cooper, supra.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 484.*]

(Syllabus by the Court.)

In Bankruptcy. Petition of attorneys for bankrupt and of receiver for compensation. Petition to review referee's findings.

Hardeman, Jones & Johnston, for creditor.

Persons & Persons, for bankrupt.

SPEER, District Judge. This case is one which in some respects has been irregularly conducted. The suit was originally brought upon petition in equity, in order to conserve the assets of the bankrupt, and Mrs. Amos was appointed by the court as receiver to take charge of the assets of the bankrupt's estate. The bankrupt himself joined in the request for the appointment of a receiver. It is unusual to appoint a woman, but it has sometimes been done with the best results in the economy, dispatch, and accuracy of management. The excellent and amiable woman here appointed had shortly before the appointment lost her husband, after long and lingering illness of consumption. She had several little children dependent on her for support. She was besides a woman of practical business training, and for a number of years had conducted the business of the successful Southern Mutual Insurance Company, at Forsyth, Ga., in the county in which the bankrupt lived. I therefore regarded her as qualified to perform her duties as receiver, and I accordingly appointed her. This action of the court was ratified by the action of creditors, who elected her as trustee. There is nothing in this case which involves the propriety of the appointment of a receiver, and no objection to such an appointment on the part of any creditor or party. Nor is there anything in the record which questions her management of the estate, except, perhaps, that she may have estimated certain property

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

some hundreds of dollars lower than it brought at the sale. In this, however, she was justified, for the bankrupt had claimed an equity of redemption in the property. It was set apart by her as an exemption to the bankrupt, and, when exposed for sale, the fee was sold. This, of course, brought more than the value as it appeared to the trustee when the equity of redemption was claimed.

The attorneys for the bankrupt, Messrs. Persons & Persons, were neighbors and friends of Mrs. Amos. These gentlemen assisted her in the preparation of the schedules, etc., and advised her in the performance of her other duties. It is highly creditable to them that they did this, and they did it, so far as I discover from the record, without any charge. Finally the referee ordered the property to be sold. The elder member of the firm, Mr. Robert Persons, recognizing the fact that the trustee herself could not well conduct the sale in person, undertook to act as auctioneer for her. An agent for creditors appeared at the sale and studiously sought to chill the bidding. His purpose was to buy the property in for his clients. He stated in the hearing of the assembled crowd at the sale that the property offered was not worth more than $900, and yet, through the judicious conduct of Mr. Persons, it was made to bring more than $2,500. This agent himself, notwithstanding his open efforts at depreciation, finally offered about that amount. The price which Mr. Persons obtained made the property bring something within $15 or $20 of its appraised value. Now, the court regarded the appraisement as a fair one. It was made by three of the most competent and disinterested merchants, among the best in Forsyth.

The question of the propriety of the fee for Persons & Persons was referred to the referee in bankruptcy as special master. After two hearings of the sworn testimony and the arguments of counsel relating to this matter, the sum of $300 was allowed to Persons & Persons for their services as the attorneys for the bankrupt. This, it is claimed, was exorbitant; but in view of the fact that they not only acted as attorneys for the bankrupt and for the trustee, but that they acted as auctioneer, thus avoiding the costs of an auctioneer whom the trustee had the right to employ, and rendered other valuable services to the trustee, while the fee is liberal, I do not regard it as at all exorbitant.

The views of this court upon this subject were expressed, in the Matter of Macon Sash, Door & Lumber Company, Bankrupt, as follows:

"The court is always very glad, indeed, to allow counsel in all proper cases fees which adequately compensate them for the skill and ability with which their professional services are rendered. Estimated upon this basis, the compensation of Mr. Smith in this case would be very large. There are, however, a good many considerations which must influence the court in fixing the fees of the attorneys.

"Since the enactment of the bankruptcy law we have habitually fixed the fees, not only of counsel, but of receivers, referees, and others, upon an economical scale. In fact, from the beginning the court has been pretty regularly assailed with complaints that such allowances for compensation have not been sufficiently large. Perhaps these complaints were at times justifiable. We have, however, felt that it was due the parties and due the law that there should be an economical administration of bankrupts' estates.

Now, in this case application is for a fee of over 50 per cent. of the amount in the hands of the trustee. This is only about $2,000, and yet two attorneys have testified that it should be subjected to a charge of $1,500 counsel fees. The master allows over 50 per cent. of the actual amount of the recovery. I do not think it is proper for the court to make any such allowance. While doubtless, the services of counsel were worth the amount allowed, if considered with sole regard to the skill and learning displayed, yet the court must have in consideration the amount which was secured by those services for the general creditors. It is one of those cases in which counsel take a certain degree of chance. Had they been successful, they would, without doubt, have received a considerable enlargement of the compensation which the court will allow; but they were unsuccessful. The effort to defeat the bankruptcy law was successful. I cannot, therefore, regard myself as at liberty to consider solely the services of counsel for petitioning creditors.

"All I can allow is 10 per cent. upon the amount in the hands of the trustee; that is, about $200. It will be so ordered." Reported 120 Fed. 231, 56 C. C. A. 578.

These views of the court were reversed by the Circuit Court of Appeals of the Fifth Circuit, in the case of Smith v. Cooper, 120 Fed. 230, 56 C. C. A. 578, Judge Pardee rendering the opinion, in the following language:

"In considering the master's report, the learned judge seems to concede that, for the services actually rendered, the amount allowed by the master was not in excess of a reasonable fee; but, for considerations of economy and the necessity of preserving a good portion of the fund recovered for the benefit of creditors, he considered it proper to reduce the amount recommended by the master, and allow only a small percentage, not of the amount actually recovered, but upon the amount left in the hands of the trustee after paying certain of the costs. While we agree with the learned judge of the bankruptcy court that to aid the parties and under the law there should be an economical administration of the bankrupt's estate, we are unable to concur with him in his reasons for reducing the fee to be allowed appellants in this case."

The allowance made by this court was thus increased on appeal by 500 per cent., without any regard to the balance in the hands of the trustee for general creditors, and the fee allowed was that reported by the master, and amounted to $1,000 on a $2,500 recovery.

It may be justifiable to state that the District Court of the Southern District of Georgia, immediately after the enactment of the bankruptcy law, determined that it was proper to judicially investigate every application for compensation. This has been done by rule. It is required that a formal petition for compensation be filed, that it be served on the trustee or his attorneys, that notice of the hearing be given, that the master shall make and file with his report a stenographic report of the evidence, that the report itself shall show the value of the property, the extent of the services of counsel, and recommend the proper approximate fee to be allowed. Formal notices of the filing of this report are issued by the clerk to the trustee and to the attorneys of each party at interest, and the rule provides that the report shall remain on file for five days so that exceptions may be filed. If such exceptions are filed, they are considered, and argument heard by the District Judge. The fee is often reduced, and very infrequently enlarged, as it may appear to be justified by the record. It is believed that this procedure has

resulted in saving many thousands of dollars to the estates of bankrupts, and the trivial cost of the inquiry has proved no sort of a counterbalance to the large sums thus saved. In no case have the parties or attorneys been permitted to adjust fees by agreement among themselves. These separate records of the proceedings to fix compensation have been carefully filed, and may be found in the clerk's office in the record in each case. And in no case since Smith v. Cooper, supra, to the date on which the oral opinion in this case was filed, has complaint been made to the Circuit Court of Appeals, because of a judicial finding on any such application.

As to the compensation allowed the receiver herself, there was no complaint whatever before this court, and no exception is made thereto. Sixteen hundred dollars, the statutory amount fixed by the law of Georgia, was set apart as the bankrupt's exemption. The referee, however, without warrant of law so far as I understand, assessed this exemption with all the costs of the litigation. The referee will be directed to so modify his order as to assess the costs of the litigation, not against the bankrupt's exemption, but against the general fund in the hands of the trustee, held for the benefit of unsecured creditors. This is small, but the bankruptcy court can be scarcely held responsible for the fact that a person who becomes bankrupt has not anterior to the bankruptcy accumulated a larger estate.

It follows that the fee which has been allowed the attorneys by the referee is deemed not unreasonable, and is approved by the court.[1] The homestead, which is set apart in cash, will be turned over to the bankrupt. In this way the erroneous record will be corrected, and the estate administered in accordance with my conception of the bankruptcy law. While the result may not be very satisfactory to unsecured creditors, they would have obtained nothing whatever if the agent of some, who appeared at the sale and sought to buy in the property at a figure not more than one-half of the sum of the exemption allowed by law, had succeeded in his unlawful and unwarrantable interference at that sale. A repetition of such conduct will be visited by a rule for contempt, not only against the agent of the creditor who so acted, but against the creditors whom he represented.

[1] NOTE. It is learned that since the oral opinion in this case was rendered, on petition for review the Circuit Court of Appeals has affirmed the allowance of the attorneys' fee in this case, and has stated that there were no specifications of error as to the fee allowed to the receiver.