## In re SOUTHERN STEEL CO.

(District Court, N. D. Alabama, S. D.   May 18, 1909.)

### No. 7,977.

1. BANKRUPTCY (§ 63*)—ACTS OF BANKRUPTCY—CORPORATIONS—"ACT OF BANK-RUPTCY."

   A resolution adopted by the board of directors of a corporation authorizing an attorney to represent the corporation generally in any bankruptcy proceedings pending or that may be brought, and in his discretion to agree to the appointment of receivers, did not constitute an act of bankruptcy on the part of the corporation within Bankr. Act July 1, 1898, c. 541, § 3a (5), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), nor did it authorize the attorney to commit such act in its behalf.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 63.*]

   For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

2. BANKRUPTCY (§ 63*)—ACTS OF BANKRUPTCY—CORPORATIONS.

   An officer of a corporation cannot commit an act of bankruptcy in its name and behalf by admitting its inability to pay its debts and its willingness to be adjudged a bankrupt on that ground without express authority.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 63.*]

3. BANKRUPTCY (§ 482*)—ADMINISTRATION OF ESTATE—ATTORNEY'S FEES.

   Where two petitions in involuntary bankruptcy were filed by different creditors against a corporation, one of which did not present grounds upon which it could legally be adjudged a bankrupt, and the adjudication was made on grounds alleged in the other, the attorneys in the latter are entitled to the fee allowed for filing the petition and procuring the adjudication.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874, 897; Dec. Dig. § 482.*

4. BANKRUPTCY (§ 482*)—ADMINISTRATION OF ESTATE—ATTORNEY'S FEES.

   Attorneys representing one of two sets of petitioning creditors in bankruptcy proceedings against a corporation having opposing interests, who at once on the appointment of receivers became their counsel and were allowed and paid compensation therefor, will be deemed to have elected as between the receivers and the creditors, and are not entitled to be allowed compensation as attorneys for the latter.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 482.*]

In Bankruptcy. On review of order of referee fixing attorney's fees for petitioning creditors.

Campbell & Johnston, for trustees.

Percy & Benners, for first petitioning creditors.

Ward & Rudulph, Lee J. Marx, Powell & Blackburn, and A. Leo Oberdorfer, for second petitioning creditors.

HUNDLEY, District Judge. On the 25th day of October, 1907, a petition on behalf of certain creditors named therein was filed in this

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

court praying that the Southern Steel Company be adjudged a bankrupt. In that petition, which is designated as the petition of the first petitioning creditors, Messrs. Percy & Benners appeared as counsel for petitioners. At the same time there was presented to me another petition for other creditors seeking to have the same corporation adjudged a bankrupt, and for these creditors, who are designated as the second petitioning creditors, Messrs. Ward & Rudulph, Lee J. Marx, Powell & Blackburn, and A. Leo Oberdorfer appeared as counsel. The referee, in fixing the amount of compensation for the attorneys for the various petitioning creditors fixed the amount at $2,500 for the attorneys for the first petitioning creditors, and $2,500 for the attorneys for the second petitioning creditors; making a total of $5,000 for all the attorneys for the petitioning creditors. This action of the referee is here presented for review on petitions filed by Percy & Benners, Ward & Rudulph, Lee J. Marx, Powell & Blackburn, A. Leo Oberdorfer, and the trustees in bankruptcy.

The questions now before the court are: First. Is the sum of $5,000 a reasonable and proper compensation to be paid to the attorneys for the petitioning creditors for preparing the petition and procuring the adjudication in bankruptcy? Second. Should the attorney's fee for petitioning creditors when allowed in this case be equally divided between the attorneys for the first petitioning creditors and the attorneys for the second petitioning creditors, or should the said fee be paid alone to the attorneys for the first petitioning creditors or alone to the attorneys for the second petitioning creditors?

The law in reference to the allowance of attorney's fees in bankruptcy to the petitioning creditors has been fixed by statute and has been construed by the courts. The decision of the Court of Appeals of the Seventh Circuit (In re Curtis, 4 Am. Bankr. Rep. 17, 100 Fed. 785, 786, 41 C. C. A. 61) upon this question has been approved by the Court of Appeals in this circuit (Smith v. Cooper, 9 Am. Bankr. Rep. 755, 120 Fed. 230, 56 C. C. A. 578), as the rule upon which such fees are to be fixed and determined. In the Curtis Case, supra, the court said:

"In the administration of an estate in bankruptcy the law permits the allowance of 'one reasonable attorney's fee for the professional services actually rendered * * * to the petitioning creditors in involuntary cases.' Act July 1, 1898, c. 541, § 64b, subd. 3, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447). * * * The attorney for the petitioning creditors is entitled to this reasonable fee as of right. Its allowance or disallowance is not matter of discretion. So, also, the amount to be allowed does not rest in mere discretion. The amount must in all cases be reasonable, to be determined upon evidence of the service performed and of its value, and, in the absence of evidence of its value, by the court from knowledge of its worth. The amount to be allowed rests in legal judgment and judicial discretion, but not in unrestrained discretion."

Basing the remuneration to be paid as a fee for the petitioning creditors upon the services performed by their attorneys in preparing the petition and in procuring the adjudication, it is the opinion of the court that the amount of $5,000, as fixed by the special referee herein, is reasonable and proper, and the conclusion of the referee in that respect is approved and affirmed.

The next question to be determined is, to which attorneys shall this fee be paid, or shall it be divided equally between the attorneys for the first petitioning creditors and the attorneys for the second petitioning creditors? At the time of the presentation of the petition for the first petitioning creditors the second petition was also presented, and the good faith in reference to the filing of the first petition was brought into question by the second petitioning creditors, and it was contended: First, that the petition filed by the first petitioning creditors was a collusive one with the bankrupt, the Southern Steel Company, for the purpose of permitting the bankrupt to secure the appointment of receivers of its own choice, who would conduct the business of the corporation not for the benefit of the creditors, but in reality for the benefit of the bankrupt corporation itself; and, second, that the averment of the act of bankruptcy in the first petition could not be sustained as matter of law, and was but a mere subterfuge on the part of the bankrupt corporation to permit it to secure the appointment of receivers of its own naming.

Upon the first proposition this court by a decree rendered on the 21st day of January, 1908, determined that upon the evidence then presented the contentions of the second petitioning creditors were sustained. Birmingham Coal & Iron Company v. Southern Steel Company (D. C.) 160 Fed. 212. From that decree no appeal was ever taken, and subsequent proceedings in this cause only tend to sustain the contention of the second petitioning creditors made at the time of the filing of their petition.

Upon the second proposition the only evidence to sustain the averment in the first petition that "the Southern Steel Company committed an act of bankruptcy in that it did admit in writing its inability to pay its debts, and its willingness to be adjudged bankrupt on that ground," was the proof that at a meeting of the board of directors of the Southern Steel Company in New York City on October 22, 1907, a resolution was adopted in words and figures as follows, to wit:

"Whereas, certain creditors have threatened to institute proceedings in voluntary bankruptcy against the company and thereby secure advantage in the appointment of temporary receiver, and, in order to avoid permitting them to secure this advantage, we deem it to the benefit of all interested that the assent of the company be given to the appointment of a temporary receiver, or receivers, in bankruptcy, if it becomes necessary.

"Now, therefore, be it resolved, that O. R. Hood, attorney for the company, be, and he hereby is, authorized and empowered to represent the company generally in any suit or suits, or bankruptcy proceedings, that are now pending, or that may be brought against the company looking to the placing of it in involuntary bankruptcy and to the appointment of the temporary receivers, and that he be, and is hereby, given full power and authority to exercise his discretion in agreeing in the name of and on behalf of the company in such a proceeding to the appointment of a temporary receiver or receivers, and to authorize and give its assent to all things necessary or expedient in connection therewith."

Subsequently, at Birmingham, Ala., O. R. Hood, as attorney for the Southern Steel Company, wrote the Sayre Mining & Manufacturing Company as follows:

"Birmingham, Alabama, October 24, 1907.

"Sayre Mining & Manufacturing Company, Birmingham, Alabama.

"Gentlemen: In regard to your claim against the Southern Steel Company, I beg to say that we are in a position where we cannot pay it. We regret to

make this statement and admission; under these circumstances we are forced to make the admission to you and all other concerned, that the Southern Steel Company is unable to pay its debts and is willing to be adjudged a bankrupt on that ground.

"Very truly yours,                          Southern Steel Company,
                                            "By O. R. Hood, Atty."

There can be but one conclusion from a reading of these resolutions, in connection with the other evidence in this case, and that is that their sole purpose and intention was to secure the appointment of a temporary receiver of its own selection for the estate of the bankrupt corporation. The vote of the corporation by its directors, even granting that the directors had full and complete authority to meet in New York City and adopt the resolutions herein set forth, was not an act of bankruptcy within the meaning of the statute, because in itself it was not a written admission by the corporation of its inability to pay its debts and its willingness to be adjudged a bankrupt on that ground. This is not such an unqualified admission as is required by the statute (Act July 1, 1898, c. 541, § 3a (5), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]). In re Baker-Ricketson Company (D. C.) 4 Am. Bankr. Rep. 605, 97 Fed. 489; In re Wilmington Hosiery Company (D. C.) 9 Am. Bankr. Rep. 579, 120 Fed. 179. But let us examine the resolution and see what it authorized Hood to do. First, it authorized him to represent the company generally "in any suit or suits or bankruptcy proceedings" now pending and that may hereafter be brought. Second, it authorized him to agree on behalf of the company to "the appointment of a temporary receiver or receivers and give its assent to all things necessary or expedient in connection therewith." Giving all the force this language implies, the purpose and authority delegated therein to Hood was to represent the corporation generally in securing a temporary receiver and in any suit or suits or bankruptcy proceedings. Granting that the corporation could delegate to an agent or attorney the power to commit the act of bankruptcy as that agent or attorney might determine (which, of course, it could not do), then, even in that event, the resolution falls far short of authorizing the commission of the act of bankruptcy sought to be proven. On this same date upon which Hood wrote this letter, E. T. Schuler, as vice president of the corporation, wrote the following letter, to wit:

                                            "Birmingham, Oct. 24, 1907.
"Sayre Mining & Mfg. Co., Birmingham, Alabama.

"Gentlemen: I regret very much to state that the Southern Steel Company is unable to pay its debts and is willing to be adjudged a bankrupt on that ground.

"Yours truly,                               Southern Steel Company,
                                            "E. T. Schuler, Vice-President."

No evidence was offered to show that the corporation had authorized Schuler to write this letter. The letter was not within the powers and duties incident to the vice presidency of the corporation, and that an officer of a corporation has no authority to write a letter in the name of the corporation committing the corporation to an act of bankruptcy without express authority is too plain to need argument. Any other view of this question would be to hold, in effect, that an

169 F.—45

officer of a corporation may throw it into bankruptcy as suits his will or caprice.

Thus it will be seen that the adjudication of the Southern Steel Company as a bankrupt could not have been legally or properly secured under the averments of bankruptcy as set forth in the petition of the first petitioning creditors and the evidence offered to sustain the same. With this condition of the record, when this cause was submitted for adjudication on the 21st day of January, 1908, by agreement of all parties in interest, all the/cases were consolidated, and, inasmuch as the receivers had been appointed on the application of the first petitioning creditors, this court deemed it proper for the interests of all concerned to permit the petition of the first petitioning creditors to be amended so as to incorporate the acts of bankruptcy set up by the second petitioning creditors, in order to save the confusion and loss to creditors that might arise from the dismissal of the first petition under which the receivers were appointed, and upon this an adjudication was had; all parties in interest, including the bankrupt, agreeing in open court that the corporation should be adjudged a bankrupt. Thus, too, it will be seen that the work and services which in reality secured the adjudication in bankruptcy in this cause were those performed by the attorneys for the second petitioning creditors, rather than the attorneys for the first petitioning creditors; and if any fee shall be allowed for services in securing the adjudication it is right and proper that that fee should be allowed to the attorneys for the second petitioning creditors, rather than to the attorneys for the first petitioning creditors, since the second petitioning creditors alone presented grounds upon which the corporation could legally be adjudicated a bankrupt.

There is another reason why these attorneys for the first petitioning creditors, Messrs. Percy & Benners, are not entitled to share in the fee allowed by statute for petitioning creditors. On the filing of the first petition and the appointment of the receivers for the Southern Steel Company these attorneys, Messrs. Percy & Benners, became the attorneys, in part, for the receivers, and thereafter acted as such attorneys until the receivership was terminated and the assets of the bankrupt estate were placed in the hands of the trustees; and they are also of counsel for the trustees. As such attorneys for the receivers, Messrs. Percy & Benners received the sum of $6,000 as fees, and they are also entitled to and will receive fees as attorneys for the trustees. On the averments of the two petitions filed seeking to have the corporation adjudicated a bankrupt, there were necessarily positive litigated matters of both law and fact between the first and second petitioning creditors; and the receiver being an officer of the court and required to take in charge and preserve the estate of the bankrupt for the benefit of all parties in interest, impartially and in a disinterested manner, it follows that an attorney representing one of the parties to the litigated questions of law and fact pending between the two sets of petitioning creditors would be placed in an inconsistent attitude in being also an attorney for the receivers. Messrs. Percy & Benners evidently recognized this condition of affairs when they be-

came of counsel for the receivers immediately upon the appointment thereof and before the determination of the issues between the petitioning creditors, and their entering into such employment and accepting a fee therefor may be construed in law as a termination of their employment and services to the first petitioning creditors. A case directly in point with the question here presented is the case of In re T. E. Hill Company, 20 Am. Bankr. Rep. 73, 159 Fed. 73, 86 C. C. A. 263, decided by the Court of Appeals for the Seventh Circuit, in which the court says:

"It is the general rule that receivers are to select counsel not identified with the interests of one or the other party to the litigation (Beach on Receivers, § 262; Gluck & Becker on Receivers of Corp. § 47; In re Kelly Dry Goods Company [D. C.] 4 Am. Bankr. Rep. 528, 102 Fed. 747, 749); and for departure from this wholesome rule special circumstances and authorization are needful."

In the case of In re Kelly Dry Goods Company, supra, cited with approval by Judge Seaman, as Circuit Judge, the court says:

"It is the well-recognized rule in equity that the receiver shall engage counsel who stands independent of the parties to the ligitation (Beach, Rec. § 262), and the estate is not chargeable for services which may be given to the receiver by the attorney for either party during the continuance of such relation. So, in the case at bar, unless the service for which the charge was allowed was both necessary and independent in the sense of the rule referred to, it is not allowable as an expense of the receivership. The purpose of the appointment of a receiver in bankruptcy is one of mere temporary custody, and the duties are generally of the utmost simplicity. If complications arise in which the parties before the court have opposing interests, he should not take counsel of either; and, if under any circumstances the attorney of either party is engaged by him, there must at least be complete severance of all service and duty to the litigant party. Otherwise, any service rendered must be deemed either gratuitous or in the interest of the original client. Here the attorneys for whom the charge is made appear both of record and in fact for the petitioning creditors before and after the receivership, are on the petition for the adjudication in bankruptcy, on the application for a receiver, and subsequently appear for the creditors at the meetings held during the continuance and after the close of the receivership. Under such conditions, any service rendered must be referable to their engagement for their clients, and, if chargeable to the estate for any amount, are in that relation only, and upon special order of the court."

It is well to note the language of the court in this case. If "under any circumstances" the receiver engages the attorney of either party, there must be a complete severance from all duty to the party litigant. This severance took place immediately on the appointment of Percy & Benners by the receivers as attorneys within 24 hours of the filing of the petition. Under the rule laid down in the Kelly Case, supra, it would, of course, have been entirely proper for the trustees to have resisted the payment of the fee to Messrs. Percy & Benners as attorneys for the receivers on the grounds that they were also attorneys for the petitioning creditors, but this course was not pursued; and, while it is true that after the appointment of the receivers the court was advised that their appointment was not pleasing to these attorneys, yet they filed no objection thereto upon the records of this court, but proceeded immediately to represent them as counsel and to receive the sum of $6,000 as such counsel for the receivers. This action of Percy

& Benners was an election by them to represent the receivers rather than the petitioning creditors, and, having so elected and received remuneration therefor, they cannot now properly be allowed to obtain compensation as attorneys for petitioning creditors who were "parties before the court having opposing interests." Speaking of the employment of counsel in this dual capacity, Lacombe, Circuit Judge, well says, in the case of In re Strobel (C. C. A.) 20 Am. Bankr. Rep. 23, 160 Fed. 916:

"It would have been well had Congress in the bankrupt act expressly prohibited receivers from selecting as attorneys or counsel lawyers who had appeared for either the bankrupt or the petitioning creditor. Such selection affords a ready opportunity for chicanery, fraud, and perjury; and it would seem desirable for bankruptcy courts generally to adopt the wholesome rule in force in the Southern District of New York forbidding such selection, and to enforce such rule rigidly."

From what has been said above it is the opinion of the court that the attorneys for the second petitioning creditors are entitled to have and receive the sum of $5,000 as the one fee allowed attorneys for petitioning creditors in bankruptcy in this cause; and such order will now be made in accordance with this opinion.