## In re WEISSMAN.

(District Court, D. Connecticut. September 9, 1920.)

No. 4910.

1. **Bankruptcy ⊂⊃484—Fees of receiver limited by Bankruptcy Act.**

Although, because a receiver was in constant attendance at hearings before the commissioner, no objection was made by attorneys representing nearly all the creditors to an allowance to the receiver in excess of the commissions fixed by Bankruptcy Act, §§ 48d, 72 (Comp. St. §§ 9632, 9656), yet, in view of the express limitation by statute, the court could not allow more to the receiver, even by way of special compensation.

2. **Bankruptcy ⊂⊃272—Bill for accountant's services held reasonable.**

Accounting corporation's bill for services, of $3,071 for 812¼ "billing hours," *held* reasonable, and ordered paid.

3. **Courts ⊂⊃57 (2)—Stenographer's rate for copies of testimony in bankruptcy proceeding fixed by court order.**

In bankruptcy proceeding, stenographer's bill for services and expenses *held* properly ordered paid, on condition of furnishing any person copies of testimony at a rate per folio not exceeding the rate per folio paid in the Southern district of New York, copies to be furnished the commissioner without expense to him, in case of copies ordered by any one other than by the commissioner, and, if ordered only by the commissioner, the expense to be borne by the estate.

4. **Bankruptcy ⊂⊃247—Advances by attorney to court stenographer not settled in trustee's proceeding for instructions.**

A dispute between the attorney for the creditors' committee and the stenographer employed, as to an amount advanced the stenographer by the attorney, will not be settled in a proceeding on petition of trustees respecting the payment of bills presented for services rendered prior to their election.

5. **Bankruptcy ⊂⊃482 (3)—Elements determining allowance to attorneys for petitioning creditors stated.**

The elements to be taken into consideration in making an allowance to attorneys for petitioning creditors are the time properly required to be spent on the controversy, the intricacy of the questions involved, the amount involved, the strenuousness of the opposition encountered, the results achieved therein, and the policy of the bankrupt act toward economy in administration.

6. **Bankruptcy ⊂⊃272—Expenses of receivership separate from expenses of trusteeship.**

Expenses pending receivership, and prior to election and qualification of trustees, for investigations and in subpœnaing witnesses, are separate from expenses thereafter incurred, and should be filed separately.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Bankruptcy ☞482(3)—Fee to attorneys for bankrupt divided between them.**

In view of Bankruptcy Act, § 64b, subd. 3 (Comp. St. § 9648), one fee of $2,500 *held* allowable to two attorneys for bankrupt, from which $500 received by one attorney from friends of the bankrupt would be deducted, leaving the balance of $2,000 to be equally divided between the attorneys; there being no allegation in their petition showing any greater amount of work performed by one than by the other.

In Bankruptcy. In the matter of Joseph Weissman, bankrupt. On petition of trustees respecting payment of certain bills. Payment ordered according to opinion.

Benjamin Slade, of New Haven, Conn., for bankrupt.
David Strouss, of New Haven, Conn., for trustee.

THOMAS, District Judge. The petition signed by the trustees represents that an involuntary petition was filed against the bankrupt on November 21, 1919, and that upon the same day, upon the petition of Archibald Palmer, Esq., representing creditors of the bankrupt, a special commissioner was appointed for the purpose of taking testimony under section 21a of the Bankruptcy Act (Comp. St. § 9605). Under the orders issued it appears that various hearings were had under section 21a, and in connection therewith certain expenses were incurred prior to the qualification of the trustees, and that certain bills, 13 in number, have been presented to the trustees for payment, upon which this court is asked to pass.

At the first hearing all were ordered paid except the following: (1) David Strouse, receiver, $7,500; (2) Federal Accounting Corporation, $4,207.39; (3) Alexander Reissman, stenographer, $1,646. Further notice was ordered with reference to the three bills above mentioned, and pursuant thereto, and subsequently, further hearing was had respecting their payment. At said hearing attorneys representing nearly all creditors in number and amount were present and consented to the further presentation of two bills, duly verified, as follows: (4) Philip Pond, attorney for bankrupt, $2,500, less $500 received from friends of the bankrupt. (5) Benjamin Slade, attorney for the bankrupt, $2,500. These five bills will be discussed in their order.

1. So far as the bill of the receiver is concerned, his fees are fixed by section 48d of the Bankruptcy Act (Comp. St. § 9632), which, so far as is here pertinent, provides:

"Receivers * * * appointed pursuant to section 2, subdivision 3, of this act shall receive for their services, payable after they are rendered, compensation by way of commissions upon the moneys disbursed or turned over to any person, * * * by them, and also upon the moneys turned over by them or afterwards realized by the trustees from property turned over in kind by them to the trustees, as the court may allow, not to exceed six per centum on the first five hundred dollars or less, four per centum on moneys in excess of five hundred dollars and less than one thousand five hundred dollars, two per centum on moneys in excess of one thousand five hundred dollars and less than ten thousand dollars, and one per centum on moneys in excess of ten thousand dollars."

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A limitation on the fees of receivers is fixed by section 72 of the act (Comp. St. § 9656), so that a receiver cannot be paid more than is allowed under section 48, as section 72 provides:

"That neither the referee, receiver, marshal, nor trustee shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed in this act."

As the court has no definite figures upon which to compute the commissions as provided for in section 48d, this claim is referred back to the special commissioner, with instructions to calculate forthwith the commissions due in accordance with the provisions of section 48d, and when thus computed the amount thus found due is ordered paid forthwith to the receiver by the trustees. While no objection was made by the attorneys representing nearly all the creditors to an allowance to the receiver in excess of the statutory commissions, because of the fact that the receiver was in constant attendance at the hearings before the commissioner, in view of the express limitation imposed by the statute I am unable to allow more to the receiver, even by way of special compensation.

[2] 2 and 3. The bills presented by the Federal Accounting Corporation and Alexander Reissman, the stenographer, present certain difficulties for the court, due to the fact that counsel for creditors who employed them had no definite contract with them, specifying the price to be paid. Under such circumstances the law allows them, as it does in all cases where nothing definite is fixed by the contract of employment, a reasonable price. Their respective bills are high. No evidence was offered at the hearing respecting the reasonableness of the charges, except the testimony of the respective claimants, each of whom stated that the charges were the usual charges made by them in such matters, and that the charges were reasonable. I am not prepared to say that, even though they are high, they are unreasonable.

In the case of the Federal Accounting Corporation, the bill presented amounts to $4,207.39. Of this amount the expenses incurred were $1,136.39, so that the net bill rendered for services is $3,071. The total number of "billing hours" was 812¼, thus showing an average charge of about $3.75 per hour, or $26 per day, for those who were acting as expert accountants. If due allowance is made for the corporation for overhead and expenses of maintenance, etc., the net amount charged will be somewhat reduced. While the per diem may seem high, it appears from the statements of Mr. Miller that the corporation's employés are not continuously at work for the corporation, bringing in a continuous revenue, yet they have to be kept constantly on the pay roll of the corporation in order to preserve the organization. In view of all the circumstances, the bill as presented is ordered paid.

[3] 3. Reissman is an expert court stenographer. He is in the same unfortunate position as the Federal Accounting Corporation—under a contract of employment, with no price agreed upon. It appears that Reissman was taken out of his regular employment in New York by Mr. Palmer, the attorney for the creditors' committee, and induced by

representation of big pay to leave his court work in New York. His travel was from New York to New Haven, to Boston, to New Haven, to New York, and his travel back and forth between these cities was at the request of the agent of the creditors' committee, for the purpose of taking testimony before the different referees and commissioners before whom different hearings were scheduled, pursuant to section 21a. His expense account for travel and hotels covered a period of three weeks and amounted to $276. This is rather high, but there is no evidence before me that it was not actually incurred, nor am I permitted to infer that it was not incurred, as the positive evidence is that it was expended. Hence it must be allowed.

It was indeed unfortunate for him that he did not heed the suggestion of the commissioner and return to New York the first day he arrived; but his justification for staying is that the attorney for the creditors' committee insisted upon his giving his services, upon call, for the benefit of the creditors, as requested by the attorney who employed him. Whether he exercised good or bad judgment is not for me to decide. That he lost his time, that he rendered services, and that the committee availed itself, through its attorney, of his services, is clear, and because of this he must be paid what is reasonable. The bill presented for services, as amended, is $1,150. Some controversy has arisen respecting copies of testimony to be furnished. No copies of testimony have been made. Whether or not they will be needed does not appear; but, if they are, such person as desires a copy, and who is willing to pay for the same, may make a financial arrangement with Reissman for such folios as are requested, at a rate not to exceed the rate paid per folio in the Southern district of New York, and, if such copies are ordered by any one other than the commissioner, then a copy must be furnished the commissioner without expense to him; but, if ordered only by the commissioner, then such expense shall be borne by the estate. Upon the receipt, by the commissioner, of a letter from Mr. Reissman stating that he assents to such an arrangement, the bill for services rendered and time spent is ordered paid to the amount of $900, together with disbursements of $276, making a total of $1,176.

[4] Some dispute was had at the hearing respecting some amount advanced to Reissman by Palmer. This proceeding is not the place to settle that dispute. It is a matter for personal adjustment between Reissman and Palmer.

[5] 4. Archibald Palmer, Esq., as attorney for the creditors' committee, presents a bill for $7,500 for services rendered between November 20, 1919, and January 6, 1920. According to his petition, Attorneys Palmer, Shaine, and Memhard represent the committee, but Palmer "had been designated to act on behalf of the creditors." It was at Palmer's instigation that the proceedings were instituted and a receiver appointed. He prepared the petition for the appointment of the commissioner and for the examination under section 21a. He, as his petition duly verified shows, was exceedingly active in the preparation of the case, and conducted the inquiry before the commissioner, and gave practically all of his time, early and late, from November

20, 1919, to January 6, 1920, to the various phases of the different proceedings then pending before the court and the commissioner.

Whether or not Palmer is under a retainer from the committee he represents does not appear. Nor is it material. The allowance is not only customary, but it is a matter of right, under section 64b, subd. 3 (Comp. St. § 9648), but the amount to be allowed is not wholly a matter of discretion; .it must be reasonably determined, upon evidence of the services performed, and of the value of such service. In re Curtis et al., 100 Fed. 785, 41 C. C. A. 59; Smith v. Cooper, 120 Fed. 230, 56 C. C. A. 578. As stated by Collier (page 937, 11th Edition):

"The elements to be taken into consideration in making an allowance to attorneys for petitioning creditors are (1) The time properly required to be spent on the controversy. (2) The intricacy of the questions involved. (3) The amount involved. (4) The strenuousness of the opposition encountered. (5) The results achieved therein. (6) The policy of the bankruptcy act toward economy in administration."

Discussing these in their order, is it conclusively shown (1) that Palmer spent all of his time from November 20th to January 6th, a period of 47 days; and that (2) the matter in hand was intricate. As to (3) the amount involved was theoretically large, and the receiver had on hand and turned over to the trustees about $85,000. It is fair to say that (4) the opposition and difficulties encountered were strenuous; at least the work performed by Palmer was. The results accomplished (5) are as yet uncertain. (6) The money thus far received was largely from the sale of the stock on hand, so that it cannot yet be said that the results achieved have resulted, so far as the receipt of actual cash is concerned, in anything substantial by way of increasing the assets of the estate.

It is alleged in paragraph 32 of the petition, inter alia:

"That at the present time your petitioner should be allowed on account of services rendered to the receiver compensation which your petitioner may afterward apply to this court for an increase, and that your petitioner may have further compensation for services rendered in accordance with the amount of assets that may hereafter be recovered to the estate through his services rendered during this period."

From this allegation it is quite apparent that the petitioner was unmindful of the elements to be taken into consideration in fixing an allowance, and in effect agrees that he has, as yet, not brought himself within the fifth and sixth elements as stated supra. Therefore, and without prejudice to his right to again bring the matter to the attention of the court at such time as the petitioner believes that he has brought himself within the elements (5) and (6), an allowance on account at this time will be made of $2,500, which is ordered paid by the trustees.

[6] Paragraph 33 of the petition says:

"Your petitioner believes that the expenditures incurred during this period for these investigations and in subpœnaing witnesses should be hereafter considered at the time that an application will be made for an allowance as attorney for the trustees, so that all disbursements may be paid for at one time."

Even in view of the above concession by the petitioner, it is suggested and therefore ordered, that an itemized account be filed of expenses from November 20, 1919, to January 6, 1920, as such expenses are properly a charge against the estate pending the receivership and are separate and distinct from the expenses incurred since the trustees were elected and qualified, and when so filed, as ordered, and if, upon notice and hearing had, they are correct and just, they will be ordered paid.

[7] 5. The only remaining question is the amount of compensation to be allowed the attorneys for the bankrupt. Two claims have been presented—one by Benjamin Slade, Esq., for $2,500; and one by Philip Bond, Esq., for $2,500, he alleging in his petition that he has received $500 on account from friends of the bankrupt.

The Bankruptcy Act permits the court to allow only one fee for the attorneys for the bankrupt. Section 64b, subd. 3, provides, so far as is here pertinent, as follows:

"The debts to have priority * * * and to be paid in full out of bankrupt estates, and the order of payment shall be (1) * * * (2) * * * (3) * * * and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, * * * to the bankrupt in involuntary cases while performing the duties herein prescribed."

It is very clear that this does not mean that only one attorney may be paid out of the funds of the estate, but it is very clear that the allowance to be made to the attorneys for the bankrupt, just as to the attorneys for the petitioning creditors shall be paid and can be only one fee. In this instance, just as in the case of the attorney for petitioning creditors, certain elements must be taken into consideration in making such an allowance. From both petitions it appears that various proceedings were instituted by creditors and among them were:

"Turn over proceedings, seeking the recovery of assets alleged to belong to the bankrupt estate, proceedings in the nature of ne exeat, and examinations under § 21a of the Bankruptcy Act," and that "numerous hearings were had from time to time between the 21st day of November, 1919, * * * and January 6, 1920," and that both petitioners acted as attorney for the bankrupt in most of said proceedings, and, among other services rendered to said bankrupt, appeared before the judge then sitting in this district at Hartford on several occasions, and also appeared before the judge then holding the term for the District of Connecticut at Brooklyn, N. Y., and at New Haven, Conn., and your petitioner drafted various orders, motions, and briefs in connection with said proceedings, and devoted a great deal of time in connection with all of said proceedings."

The sum of the two bills presented is $5,000. This is altogether too large and entirely out of proportion to the services rendered, in view of the rulings of the courts wherever this matter has been under discussion. The affidavits should have been more specific.

The best considered opinion I have been able to find on this subject is by Judge Adams in In re Rosenthal & Lehman (D. C.) 120 Fed. 848. In that case the court said (page 850):

"The test, in my opinion, is whether the employment is necessarily made, and the services necessarily rendered in good faith, for the real purpose of so

267 F.—38

administering the act in a given case as to accomplish the purposes of its enactment. If the employment is reasonably necessary to aid either in the discovery of assets, or securing the bankrupt's discharge, or protecting the bankrupt from unjust charges or imputations of wrong, such as would subject him to the penalties of the act, a reasonable allowance should be made therefor."

Here there is nothing to show but what the employment was necessary, nor is there anything to show but what the services were rendered in good faith and for the real purpose of administering the act as to accomplish its purposes; and if it be urged, or claimed even, that the employment was to protect the bankrupt from imputations of wrong, it is apparent that such service, if made in good faith, is necessary, and that for it reasonable compensation should be allowed. In fact, such evidence as is before me is affirmative of the elements necessary and upon which reasonable compensation should be predicated. It is also very apparent that the bankrupt required the services of competent counsel, when the whole record is considered, and of this record the court may take judicial notice.

Therefore I conclude that one attorney's fee may be fixed at $2,500. As one of the petitioners has already received $500 from friends of the bankrupt, this sum should be deducted from the total amount allowed, thus leaving a balance of $2,000 to be paid by the trustees. Upon the facts set forth in the two petitions there is nothing therein alleged which shows any greater amount of work performed by one than by the other of the two petitioners. The gross amount allowed, therefore, may be equally divided between the petitioners; and it is so ordered.

Hereafter, in the case of the employment of expert accountants, or expert stenographers, or others of similar kind, and in order to avoid a similar situation as we have here, whenever an application is made, either to the court or master, for the employment of such persons, let a copy of a proposal fixing price for services, etc., be attached to the application, to the end that the court or master may know in advance with what the estate is to be charged, so that in the future such situations as are here presented may be avoided.

The five bills above discussed may be paid in accordance with the tenor of this memorandum, and without formal orders. Order accordingly.